IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TERRANCE C. CABALCE, ET AL., GEORGE JOSEPH KELII, ET AL., HEATHER FREEMAN, ET AL., CHARLIZE LEAHEY IRVINE, ET AL., <br><br> Plaintiffs, <br><br> vs. <br><br> VSE CORPORATION, ET AL., <br><br> Defendants. <br> _____ <br><br> VSE CORPORATION, <br><br> Third-Party Plaintiff, <br><br> vs. <br><br> UNITED STATES OF AMERICA, ET AL., <br><br> Third-Party Defendants. <br> _____ | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL NO. 12-00373 JMS-RLP <br> CIVIL NO. 12-00376 JMS-RLP <br> CIVIL NO. 12-00377 JMS-RLP <br> CIVIL NO. 12-00391 JMS-RLP <br> (Related Cases) <br><br> ORDER GRANTING (1) THIRD-PARTY DEFENDANT UNITED STATES' MOTIONS TO DISMISS THIRD-PARTY COMPLAINTS, AND (2) PLAINTIFFS' MOTIONS TO STRIKE THIRD-PARTY COMPLAINTS |

**ORDER GRANTING (1) THIRD-PARTY DEFENDANT UNITED STATES'
MOTIONS TO DISMISS THIRD-PARTY COMPLAINTS; AND
(2) PLAINTIFFS' MOTIONS TO STRIKE THIRD-PARTY COMPLAINTS**

# I.  **INTRODUCTION**

This consolidated Order rules on Motions to Dismiss (and related Motions to Strike) the Third-Party Complaints in the following four related actions:  *Cabalce et al. v. VSE Corp. et al.*, Civ. No. 12-00373 JMS-RLP ("*Cabalce*"); *Kelii  et al. v. VSE Corp. et al.*, Civ. No. 12-00376 JMS-RLP ("*Kelii*"); *Freeman et al. v. VSE Corp., et al.*, Civ. No. 12-00377 JMS-RLP ("*Freeman/Sprankle*"); and *Irvine et al. v. VSE Corp., et al.*, Civ. No. 12-00391 JMS-RLP ("*Irvine*").  In each of these actions, Defendant/Third-Party Plaintiff VSE Corporation ("VSE") asserts the same claims in its Third-Party Complaints against Third-Party Defendant United States of America ("the United States" or "the government").[1]  Because many of the relevant pleadings and arguments are identical, it is appropriate to issue this consolidated Order in each action.

Specifically, the court has before it (1) the United States' Motions to Dismiss VSE's Third-Party Complaints; (2) related Motions by the Plaintiffs in *Cabalce*, *Freeman/Sprankle*, and *Irvine* to Strike VSE's Third-Party Complaints;

---

[1]  The Third-Party Complaints also implead Third-Party Defendant Donaldson Enterprises, Inc. ("Donaldson"), but claims against Donaldson are not at issue in these Motions. That is, regardless of rulings in this Order, the third-party claims against Donaldson remain.

To be precise, at issue are nearly identical First Amended Third-Party Complaints against Donaldson and the United States in *Cabalce*, *Kelii*, and *Freeman*; and a similarly-identical Third-Party Complaint (*i.e.*, not an amended pleading) in *Irvine*.  The court refers to the operative pleadings as "Third Amended Complaints" whether or not they have been amended.

2

and (3) various procedural and substantive joinders in both sets of Motions.  Based on the following, the Motions are GRANTED.  VSE's Third-Party Complaints against the United States are DISMISSED.

## II.  **BACKGROUND**

The Motions to Dismiss are brought pursuant to Federal Rules of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim).  Accordingly, the court begins by assuming the veracity of well-pleaded factual allegations in the Third-Party Complaints to assess whether claims are plausible.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Further, in addressing subject matter jurisdiction, the court may consider evidence outside the pleadings, construed in the light most favorable to the non-moving party.[2]  *See, e.g.*, *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005) (explaining that a court is not confined to the pleadings when addressing a Rule 12(b)(1) motion); *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) (stating that, when considering evidence in a Rule 12(b)(1) motion, courts construe disputes of fact in

---

[2]  In particular, the court has considered the June 29, 2012 Declaration of James S. Fallon, a representative of VSE (the non-moving party) attached to VSE's Notice of Removal in each case.  *See* Doc. No. 1-1, Fallon Decl. (*Cabalce*).  This citation refers to the court's electronic docket in *Cabalce et al. v. VSE Corp. et al.*, Civ. No. 12-00373 JMS-RLP.  Similarly, the court references documents in different cases by the Plaintiff's last name in parentheses (*e.g.*, "(*Kelii*)" refers to documents in *Kelii et al. v. VSE Corp. et al.*, Civ. No. 12-00376 JMS-RLP).  Unless otherwise noted, the document citations refer to the *Cabalce* docket.

favor of the non-movant).  Applying these principles, the court sets forth the

following factual background.

## A.    Factual Background

On April 8, 2011, five people died in an explosion and fire in or near a

commercial storage facility located at 94-990 Pakela Street, Waipahu, Hawaii.

Doc. No. 1-2, Compl. ¶ 14; Doc. No. 1-1, Fallon Decl. ¶¶ 3, 43.  The storage

facility "is located in a cave approximately 250 feet long and 15 feet wide," with

"double steel doors at the entrance[.]"  Doc. No. 1-2, Compl. ¶ 17 (*Kelii*).  The

decedents -- Bryan Dean Cabalce, Justin Joseph Kelii, Robert Kevin Donor

Freeman, Neil Benjiman Sprankle, and Robert Leahey -- were employees of Third-

Party Defendant Donaldson Enterprises, Inc. ("Donaldson").  At least some of the

decedents were likely working and handling fireworks being held in the storage

facility.  *Id.* ¶ 20, 22.[3]  Although the exact cause of the explosion has not yet been

determined, it is undisputed that fireworks were directly involved.

The fireworks were part of a large cache (over 1,600 cartons) that had

been forfeited to the government from two separate seizures after a joint

investigation by United States Immigration and Customs Enforcement ("ICE"), the

---

[3]  Specifically, the *Kelii* Complaint alleges that Justin Kelii "and five employees of Donaldson Enterprises were working in or about the storage unit dismantling fireworks by cutting open the casings of the fireworks with a cutting tool similar to a scissors and mixing the gun powder removed from the casings with . . . diesel fuel."  Doc. No. 1-2, Compl. ¶ 20 (*Kelii*).

Bureau of Customs and Border Protection ("CBP"), and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").  Doc. No. 9-1, Third-Party Compl. ¶¶ 20-21, 25, 29, 35.  Donaldson was a subcontractor that VSE had retained to, among other duties, destroy the fireworks.  *Id.* ¶¶ 21, 23; Doc. No. 1-2, Compl. ¶ 15 (*Kelii*).  In turn, VSE was a government contractor for the Treasury Executive Office for Asset Forfeiture ("TEOAF"), which is an office of the United States Department of the Treasury.  Doc. No. 1-1, Fallon Decl. ¶ 4.

### 1.  *VSE's Prime Contract with TEOAF*

Among other functions, TEOAF supports federal law enforcement agencies, such as ICE, CBP, and ATF, with maintaining chain of custody of items seized in connection with prosecution of violations of federal law.  This support includes receiving, transporting, storing, managing, and disposing of seized or forfeited items.  *Id.* ¶¶ 5-11.  But TEOAF does not perform these support services directly.  Instead, since 2006, it has had a multi-million-dollar[4] contract with VSE to perform the support functions on a nationwide basis.  Doc. 9-1, Third-Party Compl. ¶¶ 13-15; Doc. No. 1-1, Fallon Decl. ¶¶ 8-11 & Ex. E.  "TEOAF depends on the involvement of such contractors to carry out its functions, as TEOAF does

---

[4]  The VSE contract awarded by TEOAF on September 28, 2010 was valued at over $25 million for a seven-month period.  Doc. No. 1-7, Fallon Decl. Ex. E at 2.

not maintain the necessary internal resources."  Doc. 9-1, Third-Party Compl. ¶ 21.

A CBP official, Eugene Relacion, confirms that "[c]ertain seized items are

managed by contractors nationwide, for further security and other types of control,

and due to limited federal resources, as was the case with the . . . fireworks at

issue" in these actions.  Doc. No. 45-7, Relacion Decl. ¶ 3.

Under the contract, when the government orders consignment of

seized items, VSE cannot reject them -- it is required to accept, preserve, and

protect the items until instructed by the government to take further action (such as

to destroy them).  Doc. No. 1-2, Fallon Decl. ¶¶ 16-18.  Ownership of seized items,

however, is not transferred to VSE.  Rather, once items are forfeited, the

government retains actual ownership.  *Id.* ¶ 19.

VSE's contract requires it to "provide all services, materials, supplies,

supervision, labor, and equipment, except that specified [in the contract] as

Government-furnished, to perform all property management and disposition work

set forth in [the contract]."  Doc. No. 1-7, Fallon Decl. Ex. E ¶ C.3.  VSE is

"responsible for the performance and conduct of Project Personnel at all times,"

including "any subcontracted personnel."  *Id.* ¶¶ C.3.1.1.3 & C.3.1.1.4.  The

contract specifies that "Project Personnel assigned to render services under the

Contract shall at all times be employees of [VSE] (or a subcontractor at any tier)

and under the direction and control of [VSE]" and "shall not at any time during the

Contract period be employees of the U.S. Government."  Doc. No. 1-8, Fallon

Decl. Ex. E (pt. 2) ¶ H.29.

The contract delegates responsibility for safety and hazardous

materials -- VSE must "ensure that all safety regulations, training requirements,

and certification requirements have been met by Project Personnel and

documented," Doc. No. 1-7, Fallon Decl. Ex. E ¶ C.3.1.1.1, and "is responsible for

detecting, identifying, and managing hazardous materials[.]"  *Id.* ¶ C.3.5.4; *see also*

Doc. No. 1-8, Fallon Decl. Ex. E (pt. 2) ¶ H.23.3(A).  When disposing items, VSE

is required to "destroy General Property, including hazardous materials, in

accordance with federal, state, and local laws" and its responsibilities include

"determining what materials are hazardous in accordance with state and federal

law; . . . preparing and submitting any required reports[; and] completing any

necessary training requirements related to disposal, handling, and destruction of

hazardous waste."  Doc. No. 1-7, Fallon Decl. Ex. E. ¶¶ C.3.4.1.4.1 & C.3.4.1.4.1c.

In doing so, it "shall follow . . . professional recommendations for control of

humidity and temperature, cleanliness, and handling of materials, to include

hazardous materials."  Doc. No. 1-8, Fallon Decl. Ex E (pt. 2) ¶ H.23.3(B).

Moreover, the contract requires VSE to "take proper safety and health precautions

to protect the work, the workers, and public and property of others."  *Id.* ¶ H.31.

The contract also has broad indemnity-related clauses.  It provides that VSE "shall be responsible for all damages to persons or property that occurs as a result of its, its subcontractors, or any of its or its . . . subcontractor's employees's fault or negligence."  *Id.*  It declares that VSE "is 'an Independent Contractor' and shall obtain all necessary insurance to protect Project Personnel from liability arising out of the Contract."  *Id.* ¶ H.17.  Further, under the contract, VSE agreed:

> to indemnity and hold the Government and its employees harmless in connection with any loss or liability from . . . injuries to or death of persons (including the agents and employees of both parties) if such . . . injury or death arises out of, or is caused by, performance of work under the Contract, unless such . . . injury, or death is caused solely by the active negligence of the Government or its employees.

*Id.*

### 2.    *The Seizures and Consignment of Fireworks to Donaldson*

At the time of the April 8, 2011 explosion, fireworks from two government seizures were being held at the storage facility -- the "Haleamau Seizure" and the "Chang Seizure."  Doc. No. 9-1, Third-Party Compl. ¶ 21.  The "Haleamau Seizure" consisted of 1,370 cartons of fireworks seized by ICE agents on February 4, 2009.  *Id.* ¶ 29.  The "Chang Seizure" consisted of 296 cartons seized on January 13, 2010.  *Id.* ¶ 35.  Although ICE seized the fireworks, CBP

managed the seizures for the government. *Id.* ¶ 24. Donaldson took custody of the fireworks as a subcontractor retained by VSE to handle, store, and (when ordered to do so) destroy them.[5] *Id.* ¶¶ 19, 23; Doc. No. 1-1, Fallon Decl. ¶¶ 15, 19, 22. Donaldson held a "Type 20 - Manufacturer of High Explosives" federal license/permit issued pursuant to 18 U.S.C. Chapter 40 (§ 841 et seq.) (regarding "importation, manufacture, distribution and storage of explosive materials"). Doc. No. 56-3, VSE's Opp'n Ex. 2.

Specifically, on March 29, 2010, Donaldson took custody of the 296 cartons from the "Chang Seizure," consisting of four types of fireworks on seventeen pallets. Doc. No. 1-16, Fallon Decl. Ex. L; Doc. No. 9-1, Third-Party Compl. ¶ 39. These fireworks had been forfeited to the government on March 22, 2010. Doc. No. 1-19, Fallon Decl. Ex. O. On March 24, 2010, CBP had issued a disposition order, directing that one carton of each type of fireworks be separated and preserved for evidentiary use. Doc. No. 9-1, Third-Party Compl. ¶ 40. And on April 16, 2010, CBP ordered the remaining 292 cartons to be destroyed.[6] *Id.* ¶ 41;

---

[5] Initially, for the "Haleamau Seizure" in 2009, Donaldson was a subcontractor to Timberline Environmental Services, which in turn was a subcontractor to VSE. Doc. No. 1-1, Fallon Decl. ¶ 20. Later, Donaldson had a subcontract directly with VSE for fireworks storage and destruction, including the "Chang Seizure." Doc. No. 1-12, Fallon Decl. Ex. I (part one) at 19 (Statement of Work for Destruction Services); Doc. No. 1-13, Fallon Decl. Ex. I (part two) at 28 (Request for Quotation).

[6] Donaldson was still storing the 1,370 cartons in the "Heleamau Seizure," but, as of
(continued...)

Doc. No. 1-21, Fallon Decl. Ex.Q.

### 3. *Government Approval of the Destruction Plan for the "Chang Seizure," and the April 8, 2011 Explosion*

After the government ordered destruction of the 292 cartons, Donaldson submitted a step-by-step "Disposal of Commercial Grade Fireworks Plan" to VSE on April 26, 2010.  Doc. No. 45-3, Watson Decl. Ex. A at 5-6.  VSE then submitted a corresponding "Property Destruction Plan" to CBP on April 28, 2010, describing how Donaldson personnel would prepare the seizure for destruction at the Koko Head Firing Range, overseen by a representative of Co-Defendant Blanchard Associates, Inc.  Doc. No. 1-22, Fallon Decl. Ex. R.  VSE's Property Destruction Plan contained a "Material Safety Data Sheet," setting forth numerous health and safety warnings and instructions, such as:

> **Unusual Fire and Explosion Hazards**:  Fireworks 1.3G MAY MASS EXPLODE IN A FIRE.  DO NOT ALLOW FIREWORKS TO GET WET - Hazardous Decomposition May Result in a FIRE or EXPLOSION. EXPLOSION MAY OCCUR IF EXPOSED TO SPARKS OR FLAME.
> . . . .
> **Conditions to Avoid**: - Open Flames, Sparks, High Temperatures, Friction or Impact.

---

[6](...continued)
April 11, 2011, the government had not ordered destruction of those fireworks.  Doc. No. 9-1, Third-Party Compl. ¶ 34.  That is, only fireworks from the "Chang Seizure" were to be destroyed.

**Incompatibility (Materials to Avoid)**: - Do No Allow Fireworks to Get Wet.

. . . .

**Conditions to Avoid**: - Storage in High Temperatures, Moist or Wet Conditions.  Keep away From Open Flame or Sparks.

. . . .

**Steps to Be Taken in Case Material is Released or Spilled**: - If Fireworks are spilled, carefully pick up the material and place in a Cardboard Carton.  Keep OPEN FLAMES and Sparks AWAY and NO SMOKING.

**Waste Disposal Method**: - Fireworks that fail to go off should be soaked in a bucket of water and returned to the source where it was obtained.  Dry Components or powder should be carefully swept up and placed in a cardboard container then soaked with water.  Burning of Fireworks Waste must be performed in compliance with local and state laws.

**Precautions in Handling and Storing**: - Keep from OPEN FLAMES, NO SMOKING, AVOID IMPACT of MATERIALS and CONTAINERS of MATERIALS, STORE FIREWORKS IN A COOL AND DRY ENVIORNMENT [sic], FIREWORKS 1.3G MUST BE STORED AND TRANSPORTED IN COMPLIANCE WITH FEDERAL, STATE AND LOCAL LAWS.

**Other Precautions**: - Fireworks 1.3G un 0335 can cause SERIOUS INJURY or DEATH.  They Should only be Handled by Properly Trained and Qualified Personnel. When Shooting these Fireworks, PERSONNEL SHOULD WEAR PROPER EYE PROTECTION, HEAD PROTECTION AND NON-SYNTHETIC CLOTHING.

. . . .

**Work/Hygienic Practices**: - Store Fireworks in a Cool Dry and Well Ventilated area.  Protect Against Physical

11

Damage and Moisture.  Fireworks should be isolated from all Heat Sources, Sparks and Open Flame.  No Smoking.

Doc. No. 45-8, Relacion Decl. Ex. A at 5-6.

Under the prime contract's terms, the government retains some oversight responsibilities regarding destruction of property.  In particular, the contract provides that "[VSE] shall destroy General Property as prescribed and directed by the responsible seizing or blocking agency designated representative [*e.g.*, ICE or CBP] on the disposition order."  Doc. No. 1-7, Fallon Decl. Ex. E ¶ C.3.4.1.4.  VSE's responsibilities for destruction include "[n]otifying the seizing or blocking agency official issuing the disposition order for destruction within at least five (5) working days, of location, date, and time of destruction in order to permit the agency unannounced verification of the destruction[.]"  *Id.* ¶ C.3.4.1.4.1a.  The contract further provides that "[a]ll destructions must be coordinated and approved by the responsible seizing or blocking agency designated representative."  *Id.* ¶ C.3.4.1.4.2.  Accordingly, CBP officials approved VSE's Property Destruction Plan on April 28, 2010.  Doc. No. 45-8, Relacion Decl. Ex. A at 3.

On June 10, 2010 -- only after Donaldson received an "emergency burn permit" from the State of Hawaii Department of Health -- VSE authorized

12

Donaldson to proceed with destruction.  *See* Doc. No. 45-3, Watson Decl. Ex. B (VSE email stating "you [Donaldson] are authorized to start preping [sic] seizure (soaking) contents for destruction.").  The expectation was to finish within ninety days.  *Id.*  But, by March 28, 2011, only about twenty-eight percent of those fireworks had been destroyed.  Doc. No. 45-6, Watson Decl. Ex. D.  Destruction was temporarily suspended, apparently (according to an email from Donaldson to VSE) while Donaldson implemented a procedure to "take out the small plastic tube that's located and enclosed at the bottom of the cardboard tube [of the fireworks]," which would "allow [Donaldson] to dispose of more firework by volume on multiple burns on any given burn day."  *Id.*[7]  Destruction was expected to resume in April 2011.  *Id.*

On April 8, 2011, however, a fire and explosion occurred at the storage facility.  "The blast from the explosion was so great that debris was blown over 150 feet from the front doors of the storage unit.  Three vehicles parked outside of the storage unit caught fire and burned from the intense heat and fire from the explosion."  Doc. No. 1-2, Compl. ¶ 25 (*Kelii*).  Donaldson employees Bryan Cabalce, Justin Kelii, Robert Freeman, Neil Sprankle, and Robert Leahey

---

[7] There is no indication that this email (from Donaldson to VSE) was forwarded to the government, and the record does not otherwise indicate that the government knew of this procedure, much less that it approved of it.

died during the incident.

**B.     Procedural Background**

*1.     The* **Cabalce**, **Kelii**, **Freeman/Sprankle**, *and* **Irvine** *Actions*

On May 24, 2012, suits were filed on behalf of all five decedents. Plaintiffs Terrance D. Cabalce, individually and as personal representative of the Estate of Bryan Dean Cabalce, and Gail Cabalce filed an action in the Circuit Court of the First Circuit, State of Hawaii ("State Circuit Court"), seeking damages for the death of Bryan Cabalce.  *See* Doc. No. 1-2, Compl. (*Cabalce*).  Three similar suits were also filed in State Circuit Court by (1) George Joseph Kelii, individually and as co-personal representative of the Estate of Justin Joseph Kelii; and other Plaintiffs, *see* Doc. No. 1-2, Compl. (*Kelii*); (2) Heather Freeman, individually and as personal representative of the Estate of Robert Kevin Donor Freeman, and Martin William Sprankle, individually and as personal representative of the Estate of Neil Benjiman Sprankle; and other Plaintiffs, *see* Doc. No. 1-2, Compl. (*Freeman/Sprankle*); and (3) Charlize Leahey Irvine, individually and as personal representative of the Estate of Robert Leahey, and other Plaintiffs, *see* Doc. No. 1-2, Compl. (*Irvine*).

All four actions assert state-law claims sounding in negligence, wrongful death, ultra-hazardous activity, and premises liability.  Each names the

same Defendants: VSE; Thomas E. Blanchard and Associates, Inc.; Richard Bratt; HIDC Small Business Storage LLC; Hawaiian Island Development Co., Inc.; Hawaiian Island Homes Ltd.; Hawaiian Island Commercial Ltd.; and Ford Island Ventures, LLC.  *See, e.g.*, Doc. No. 1-2, Compl. ¶¶ 5-12 (*Cabalce*).  Notably, none of the actions names the United States as a Defendant.

On June 29, 2012, VSE removed *Cabalce* to this court pursuant to 28 U.S.C. §§ 1441, 1442 & 1446, and immediately filed an Answer and a Third-Party Complaint against Donaldson and the United States.  *See* Doc. No. 4 (*Cabalce*). On July 2, 2012, VSE removed *Kelii* and *Freeman*/*Sprankle*, and also immediately filed Answers and Third-Party Complaints against Donaldson and the United States.  *See* Doc. No. 4 (Kelii) & Doc. No. 5 (*Freeman*/*Sprankle*).  Similarly, on July 12, 2012, VSE removed *Irvine* (although it did not immediately file an Answer and Third-Party Complaint).  *See* Doc. No. 1-1, Notice of Removal (*Irvine*).  The cases were re-assigned to this court as related cases under Local Rule 40.2.  *See* Doc. Nos. 23, 32.

A week after removing *Irvine*, on July 19, 2012, VSE filed an Answer and a Third-Party Complaint against Donaldson and the United States in *Irvine*. Doc. No. 6 (*Irvine*).  At the same time, VSE Amended its Third-Party Complaints against Donaldson and the United States in *Cabalce*, *Kelii*, and *Freeman*/*Sprankle*.

15

*See* Doc. No. 9 (*Cabalce*), Doc. No. 7 (*Kelii*), & Doc. No. 9 (*Freeman/Sprankle*). As noted above, these Amended Third-Party Complaints are all nearly identical to the Third-Party Complaint in *Irvine*.

### 2.   The Third-Party Complaints Against the United States

Filed pursuant to Federal Rule of Civil Procedure 14, the Third-Party Complaints seek contribution and indemnity.  Count One for "contractual indemnity" is directed at Donaldson, based on the VSE-Donaldson subcontract (Count One is not at issue in the present Motions).  Counts Two and Three both assert claims against the United States seeking "contribution and equitable indemnity" under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) & 2671 *et seq*.  In particular, as to both Counts against the United States, VSE alleges that:

> CBP and ATF decided to preserve the Chang forfeiture fireworks seized rather than destroy them as they do with certain items that such agencies consider highly dangerous, such as, for example, dynamite.

Doc. No. 9-1, Third-Party Compl. ¶ 26.

> At all times relevant herein, the knowledge of ICE, CBP and ATF concerning the potentially catastrophic danger posed by the fireworks that constituted the Chang Seizure was superior to the knowledge of VSE, and ICE, CBP, and ATF were aware, or should have been aware, of their position of such superior knowledge.

16

*Id.* ¶ 27.

> ICE, CBP, and ATF should have advised VSE of the
> potentially catastrophic danger of the Chang Seizure, but
> failed to do so.  ICE, CBP, and/or ATF either failed to
> appreciate the potential danger, of which they should
> have been aware, of the seized items, or were aware of
> such risk but did not warn VSE of it.

*Id.* ¶ 28.

Count Two primarily alleges that the United States breached a duty to

warn.  It alleges that "[t]he United States of America had a duty to disclose and

provide a warning as to the severe risk of harm posed by the fireworks that it

controlled, possessed and/or owned," *id.* ¶ 54, and the United States "breached its

duty of care to those potentially harmed by the seized fireworks by failing to

provide sufficient warning of the potentially catastrophic danger posed by the

seized fireworks."  *Id.* ¶ 55.

Similarly, Count Three is based on a theory that the United States

breached a non-delegable duty arising because storage, dismantling, handling, and

disposal of fireworks constitutes "abnormally dangerous activity."  *Id.* ¶¶ 60-61.  It

alleges that "the United States failed to warn VSE or VSE's subcontractor

Donaldson concerning the potential for catastrophic risk of harm associated with

its property, *i.e.*, the Chang Seizure."  *Id.* ¶ 62.  It further alleges that the United

States "failed to exercise ordinary care with respect to the storage, dismantling,

handling or disposal of [its] property, i.e., the Chang Seizure fireworks." *Id.* ¶ 64.

Likewise, it contends that the United States "failed to exercise ordinary care when

it decided to consign the Chang Seizure pursuant to the Prime Contract rather than

have ATF destroy the Change Seizure[.]" *Id.* ¶ 65.  And it asserts that the United

States "failed to exercise ordinary care when it decided to consign the Chang

Seizure pursuant to the Prime Contract rather [than] have ATF destroy the Chang

Seizure, and such failure resulted in the subject incident." *Id.* ¶ 66.

Accordingly, the Third-Party Complaints conclude that the breaches

by the United States "constituted a substantial factor in causing the subject

incident," *id.* ¶ 67, and if "VSE is determined to be liable for claims arising out of

the subject incident, the United States is liable in contribution to VSE," *id.* ¶ 69, or

is "obligated to equitably indemnify VSE." *Id.* ¶ 70.

### 3.   *The Motions*

On September 21, 2012, the United States filed its Motions to Dismiss

the Third-Party Complaints.  Doc. Nos. 45 (*Cabalce*), 34 (*Kelii*), 38

(*Freeman/Sprankle*) & 31 (*Irvine*).  The respective Plaintiffs filed full or partial

substantive joinders in the government's Motions to Dismiss.  *See* Doc. Nos. 45

(*Cabalce*) (Memorandum in Support); 37 (*Kelii*) (Substantive Joinder); 50

(*Freeman/Sprankle*) (partial Joinder) & 35 (*Irvine*) (Substantive Joinder).

18

Previously, Plaintiffs in *Cabalce*, *Freeman/Sprankle*, and *Irvine* had also filed Motions to Strike the Third-Party Complaints (as to claims against the United States), and Plaintiffs in *Kelii* had filed a Joinder to the Motion in *Cabalce*. Doc. Nos. 19 (*Cabalce*), 37 (*Kelii*), 40 (*Freeman/Sprankle*) & 28 (*Irvine*).  The Motions to Strike, brought pursuant to Federal Rule of Civil Procedure 14(a)(4), seek the same or similar relief as the government's Motions to Dismiss.

The remaining Defendants either took no position, or filed statements of no opposition to both sets of Motions.  VSE filed Oppositions to the Motions to Dismiss and the Motions to Strike on October 8, 2012.  Doc. Nos. 56-57 (*Cabalce*), 46 (*Kelii*), 51-52 (*Freeman/Sprankle*) & 46-47 (*Irvine*).  Corresponding Replies were filed by the United States and Plaintiffs on October 15, 2012 and October 16, 2012.  Doc. Nos. 67, 69 (*Cabalce*), 52 (*Kelii*), 61, 63 (*Freeman/Sprankle*) & 54 (*Irvine*).  The Motions were heard on October 29, 2012.

## III.  <u>STANDARDS OF REVIEW</u>

### A.    **Rule 12(b)(1)**

When the government moves to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) on the ground that allegations implicate discretionary functions, the court may consider the challenged pleadings, as well as jurisdictional facts supplied by evidence properly before the court.  *See, e.g.*, *Green*

*v. United States*, 630 F.3d 1245, 1248 n.3 (9th Cir. 2011). "With a [Rule] 12(b)(1)

motion, a court may weigh the evidence to determine whether it has jurisdiction."

*Autery*, 424 F.3d at 956. When a court considers evidence in a Rule 12(b)(1)

motion, it construes disputes of fact in favor of the non-movant. *Dreier*, 106 F.3d

at 847. When the discretionary function exception is invoked, the government

bears the burden of establishing that the discretionary function exception applies.

*See Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005); *Bear*

*Medicine v. United States*, 241 F.3d 1208, 1213 (9th Cir. 2001).

**B.      Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss

a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). This tenet -- that the court must accept as

true all of the allegations contained in the complaint -- "is inapplicable to legal

conclusions." *Id.* at 678. Accordingly, "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Id.*

(citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216

(9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Iqbal*, 556 U.S. at 679.

## C.    Rule 14(a)(4) -- Motion to Strike

Rule 14(a)(4) provides that "[a]ny party may move to strike the third-party claim, to sever it, or to try it separately."

"The decision to allow a third-party defendant to be impleaded under rule 14 is entrusted to the sound discretion of the trial court." *United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 452 (9th Cir. 1983). When exercising this

discretion, "the court should endeavor to effectuate the purpose of Rule 14," 6

Charles A. Wright et al., *Federal Practice & Procedure: Civil 3d* § 1443 at 351

(2010), which is "to promote judicial efficiency by eliminating the necessity for the

defendant to bring a separate action against a third individual who may be

secondarily or derivatively liable to the defendant for all or part of the plaintiff's

original claim." *Sw. Adm'rs Inc. v. Rozay's Transfer*, 791 F.2d 769, 777 (9th Cir.

1986).

## IV.  DISCUSSION

### A.     The Context of the Motions Under Rule 14

The United States is challenging the sufficiency of Third-Party

Complaints brought under Rule 14.  The Rule provides in part that "[a] defending

party may, as a third-party plaintiff, serve a summons and complaint on a nonparty

*who is or may be liable to it for all or part of the claim against it*."  Fed. R. Civ. P.

14(a)(1) (emphasis added).

Here, VSE seeks contribution or indemnity from the United States

under the FTCA, which waives -- subject to several statutory exceptions -- the

United States' sovereign immunity for certain torts that are committed by "any

employee of the Government while acting within the scope of his office or

employment under circumstances where the United States, if a private person,

would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b); *see also* 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provision of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances[.]").  And the FTCA's waiver of sovereign immunity extends to claims for contribution or indemnity against the United States as a third-party defendant.  *See United States v. Yellow Cab Co.*, 340 U.S. 543, 556-57 (1951) ("We therefore conclude that the Federal Tort Claims Act carries the Government's consent to be sued for contribution not only in a separate proceeding but also as a third-party defendant."); *United Air Lines, Inc. v. Wiener*, 335 F.2d 379, 401 (9th Cir. 1964) ("The right of indemnity, where it exists, may be enforced against the United States under the Tort Claims Act.").[8]

But the primary question is *not* whether the United States acted tortiously to VSE (or, conversely, whether the United States retains its sovereign immunity as to VSE).  Rather, because Third-Party Complaints are at issue, the question is whether the United States potentially breached duties owed to

---

[8] An FTCA action directly against the United States ordinarily requires exhaustion of administrative remedies.  *See* 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States for money damages . . . unless the claimant shall have first presented the claim to the appropriate Federal agency[.]").  But this exhaustion requirement "shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim."  *Id.*

*Plaintiffs*, even though Plaintiffs have not asserted claims directly against the United States.  This is because a proper third-party claim "may be asserted only when the third party's liability is in some way dependent on the outcome of the main claim and the third party's liability is secondary or derivative."  *Teruya v. Shaw*, 2012 WL 3308872, at *3 (D. Haw. Aug. 10, 2012) (quoting *Uldricks v. Kapaa 382 LLC*, 2007 WL 2694409, at *3 (D. Haw. Sept. 11, 2007)).  "The crucial characteristic of a Rule 14 claim is that [a] defendant is attempting to transfer to the third-party defendant the liability asserted against [it] by the original plaintiff."  *Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 200 (9th Cir. 1988) (quoting 6 Charles A. Wright et al., *Federal Practice & Procedure* § 1446 at 157 (1971) (other citation omitted)).  In short, "there is no right of contribution where the injured person has no right of action against the third party defendant."  *Kelly v. Full Wood Foods, Inc.*, 111 F. Supp. 2d 712, 715 (D. Md. 2000) (citation omitted).

"[C]ases where the applicable state law permits contribution among joint tortfeasors, regardless of whether the plaintiff has sued them all in the first instance, are among the most obvious cases for impleader."  *Teruya*, 2012 WL 3308872, at *4 (citation omitted).  Under Hawaii law, a defendant's right to seek contribution exists "among joint tortfeasors" under Hawaii Revised Statutes

("HRS") § 663-12.[9]  In turn, "the term 'joint tortfeasors' means two or more persons jointly or severally liable in tort for the *same injury*[.]"  HRS § 663-11 (emphasis added).  "It need not be shown that the third party defendant is automatically liable if the defendant loses the underlying lawsuit.  It is sufficient if there is some possible scenario under which the third party defendant may be liable for some or all of the defendant's liability to plaintiff."  *Teruya*, 2012 WL 3308872, at *3 (citation omitted)."

The court thus proceeds to address the Motions in this context, mindful that the ultimate issue here is whether the United States can be a "joint tortfeasor" for the April 8, 2011 deaths of the Donaldson employees.

## B.     The United States' Motions to Dismiss

In its Motions to Dismiss, the United States raises several independent grounds for dismissal, *i.e.*, grounds establishing that the United States cannot be a joint tortfeasor.  It relies foremost on statutory exceptions to the FTCA's waiver of immunity: the "independent contractor" exception (28 U.S.C. § 2671), the "discretionary function" exception (28 U.S.C. § 2680(a)), and the "detained goods"

---

[9]  For VSE to establish a right to "equitable indemnity" from the United States, VSE would have to demonstrate that the United States "is guilty of 'active,' 'primary' or 'original' fault, as opposed to the merely 'passive,' 'secondary,' or 'implied' fault of the indemnitee." *In re All Asbestos Cases*, 603 F. Supp. 599, 606 (D. Haw. 1984).  That is, it would not be enough merely to establish that the United States was a potential joint tortfeasor.

exception (28 U.S.C. § 2680(c)).  If the United States retains sovereign immunity, it cannot be a joint tortfeasor, and the Third-Party Complaints fail.[10]  It also argues that, even if VSE could invoke federal jurisdiction under the FTCA for its third-party claims, the Third-Party Complaints otherwise fail to state a claim.

### 1. Under the "Independent Contractor" Exception, the United States Cannot Be Liable for Any Alleged Negligence by VSE or Donaldson

The FTCA only waives sovereign immunity for the United States' own negligence.  "The FTCA contains an explicit exception for contractors, such that the federal government is not liable for torts committed by its contractors." *United States v. Daniel, Mann, Johnson & Mendenhall*, 355 F.3d 1140, 1146 (9th Cir. 2004) (citing 28 U.S.C. §§ 1346(b), 2671).[11]  That is, "the government cannot be held vicariously liable for the negligence of an employee of an independent contractor." *Yanez v. United States*, 63 F.3d 870, 872 (9th Cir. 1995).

Under this "independent contractor" exception, the United States cannot be liable for a contractor's acts *unless* it exercises "federal authority to

---

[10]  If the FTCA does not apply, the court lacks subject matter jurisdiction over the United States.  It is a different question, however, whether federal subject matter jurisdiction otherwise exists over the entire actions (if the Third-Party Complaints are dismissed).  That question is at issue in Plaintiffs' separate Motions to Remand.

[11]  The FTCA generally waives liability for torts of "any employee of the Government," 28 U.S.C. § 1346(b)(1).  The FTCA defines that clause as including "officers or employees of any federal agency."  28 U.S.C. § 2671.  And, in turn, the FTCA's definition of "federal agency" specifically "does not include any contractor with the United States."  *Id.*

control and supervise the 'detailed physical performance' and 'day to day operations' of the contractor." *Autery*, 424 F.3d at 956 (quoting *Hines v. United States*, 60 F.3d 1442, 1446 (9th Cir. 1995)); *see also Valadez-Lopez v. Chertoff*, 656 F.3d 851, 858 (9th Cir. 2009) ("The government may be sued under the [FTCA] for the actions of a government contractor and its employees only if the contractor is acting as an agent of the government, i.e. 'if the government has the authority to control the detailed physical performance of the contractor and supervise its day-to-day operations.'") (citations and some internal quotation marks omitted)). "[T]here must be *substantial* supervision over the day-to-day operations of the contractor in order to find that the individual was acting as a government employee." *Autery*, 424 F.3d at 957 (quoting *Letnes v. United States*, 820 F.2d 1517, 1519 (9th Cir. 1987)) (emphasis added).

Applying these principles, surely VSE and Donaldson were independent contractors -- and thus the United States cannot be even partly liable for their alleged negligence. Neither the Complaints nor the Third-Party Complaints allege (and the record contains no such evidence) that *any* government employee or agency controlled or substantially supervised the day-to-day destruction of the fireworks. Rather, all indications are that Donaldson and VSE were performing under their respective contracts. No one disputes that Donaldson

27

and VSE devised and prepared the destruction plans (both the plan that CBP

approved on April 28, 2010, and the modified procedure discussed between

Donaldson and VSE on March 28, 2011).  *See* Doc. No. 45-3, Watson Decl. Ex. A

at 5-6; Doc. No. 45-6, Watson Decl. Ex. D.  And, indeed, the VSE prime contract

specifically declares that "[VSE] is 'an Independent Contractor' and shall obtain

all necessary insurance to protect Project Personnel from liability arising out of the

Contract."  Doc. No. 1-8, Fallon Decl. Ex. E (pt. 2) ¶ H.17.

At most, employees of CBP or ICE issued disposition instructions,

ordered fireworks to be destroyed, and approved a destruction plan pursuant to

retained authority under the prime contract.  *See also* Doc. No. 56-6, O'Neill Decl.

Ex. 5 (providing evidence of a visit by government employees to the storage

facility).  But even very specific governmental contractual authority is generally

insufficient to render the United States liable for acts of its contractors.  *See Autery*,

424 F.3d at 957 ("Contractual provisions directing detailed performance generally

do not abrogate the contractor exception.  The United States may 'fix specific and

precise conditions to implement federal objectives' without becoming liable for an

independent contractor's negligence.") (quoting *United States v. Orleans*, 425 U.S.

807, 816 (1976)).  And even assuming the VSE contract gave the government the

ability to enforce safety regulations, VSE or Donaldson personnel were still not

"employees" for purposed of FTCA liability. *See id.* ("[T]he ability to compel compliance with federal regulation does not change a contractor's personnel into federal employees." (quoting *Letnes*, 820 F.2d at 1519)).

The focus, then, shifts entirely to whether there is any possibility that the United States can be liable under the FTCA for its *own* acts in (1) management decisions regarding the fireworks, such as deciding to consign the fireworks under the VSE prime contract; (2) negligently failing to warn VSE or Donaldson; or (3) negligently supervising the VSE prime contract, all as alleged in the Third-Party Complaints.

### 2. The "Discretionary Function Exemption" Shields the Government from Negligent Management of the Fireworks, and from Failure to Warn or Supervise its Independent Contractors

The "discretionary function exception" to the FTCA, 28 U.S.C. § 2680, provides in pertinent part:

> The provisions of this chapter and section 1346(b) of this title shall not apply to--
>
> (a)  Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

The United States argues that the exception bars all of the acts alleged against it in the Third-Party Complaints.  The court agrees.

    a.    *Analytical framework for the discretionary function exception*

The purpose of the discretionary function exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort." *United States v. Gaubert*, 499 U.S. 315, 323 (1991).  The government has the burden of proving the discretionary function exception.  *Meyers v. United States*, 652 F.3d 1021, 1028 (9th Cir. 2011) (citing *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1173 (9th Cir. 2002)).  "Whether a challenged action falls within the discretionary function exception requires a particularized analysis of the specific agency action challenged." *GATX/Airlog Co.*, 286 F.3d at 1174.  A two-part test applies to determine if the discretionary function exception bars an FTCA claim.

"First, for the exception to apply, the challenged conduct must be discretionary -- that is, it must involve an element of judgment or choice." *Id.* at 1173.  This inquiry "looks at the 'nature of the conduct, rather than the status of the actor' and the discretionary element is not met where 'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" *Myers*, 652 F.3d at 1028 (quoting *Terbush v. United States*, 516 F.3d 1125, 1129

30

(9th Cir. 2008)).  If a "mandatory directive" is violated, this first requirement is not met (*i.e.*, the exception does not apply) because "'the employee has no rightful option but to adhere to the directive.'"  *GATX/Airlog Co.*, 286 F.3d at 1173-74 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).

Second, the court must then "determine whether [the exercise of] judgment is of the kind that the discretionary function exception was designed to shield."  *Id.* at 1174 (quoting *Berkovitz*, 486 U.S. at 536).  "Only those exercises of judgment which involve considerations of social, economic, and political policy are excepted from the FTCA by the discretionary function doctrine."  *Sigman v. United States*, 217 F.3d 785, 793 (9th Cir. 2000) (citing *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)).  "The focus is on 'the nature of the actions taken and on whether they are susceptible to policy analysis.'"  *GATX/Airlog Co.*, 286 F.3d at 1174 (quoting *Gaubert*, 499 U.S. at 325).  The decision at issue "'need not *actually* be grounded in policy considerations' so long as it is, 'by its nature, susceptible to a policy analysis.'"  *Id.* (quoting *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000)).  "When a statute, regulation or agency guideline allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion."  *Weissich v. United States*, 4 F.3d 810, 814 (9th Cir. 1993) (citing *Gaubert*, 499 U.S. at 324).  "Even if the

31

decision is an abuse of the discretion granted, the exception will apply." *Myers*,

652 F.3d at 1028 (quoting *Terbrush*, 516 F.3d at 1129)).

       *b.*    *Application of the framework*

       i.    Consignment decisions

The court first addresses allegations that the United States was

negligent in managing the Chang Seizure, and that it can be held liable to Plaintiffs

for deciding (1) to consign the fireworks, rather than destroying them immediately,

and (2) to destroy them by contract, instead of having ATF destroy them itself.  In

this regard, VSE alleges that "CBP and ATF decided to preserve the Chang

forfeiture fireworks seized rather than destroy them as they do with certain items

that such agencies consider highly dangerous, such as, for example, dynamite."

Doc. No. 9-1, Third-Party Compl. ¶ 26.  It further alleges that the United States

"failed to take reasonable steps to ensure that its property was properly stored,

maintained, handled, and disposed of." *Id.* ¶ 45.  Likewise, the Third-Party

Complaints allege that the United States "failed to exercise ordinary care when it

decided to consign the Chang Seizure pursuant to the Prime Contract rather [than]

have ATF destroy the Chang Seizure, and such failure resulted in the subject

incident." *Id.* ¶ 66.  The court easily concludes that all these actions fall squarely

within the discretionary function exception.

At the first step, VSE has not proffered (and the court has not found) any directive such as a statute, regulation, or policy that precludes preservation of fireworks for evidentiary value, or that requires destroying seized explosives within a certain period of time.  Nor has it identified any requirement that precludes the government's use of a contractor to handle and destroy seized fireworks or explosives.[12]

Second, prosecutorial-type decisions by law enforcement agencies as to whether and how to preserve potential evidence are inherently discretionary and grounded in policy considerations.  *See, e.g.*, *Moore v. Valder*, 65 F.3d 189, 197 (D.C. Cir. 1995) (applying the discretionary function exemption, reasoning in part that "[d]eciding whether to prosecute [and] identifying the evidence to submit to the grand jury . . . are actions that . . . are quintessentially discretionary"); *Gray v. Bell*, 712 F.2d 490, 516 (D.C. Cir. 1983) ("We thus hold that section 2680(a) exempts the government from liability for exercising the discretion inherent in the prosecutorial function of the Attorney General, no matter whether the challenged decisions are made during the investigation or prosecution of offenses.") (citation

_____

[12]  Indeed, federal law authorizes the Department of the Treasury under the Department of the Treasury Forfeiture Fund to pay "for the employment of outside contractors to operate and manage properties or to provide other specialized services necessary to dispose of such properties," 31 U.S.C. § 9703(a)(1)(b)(2), and to pay for "the services of experts and consultants needed by a Department of Treasury law enforcement organization to carry out the organization's duties relating to seizure and forfeiture."  31 U.S.C. § 9703(a)(1)(H).

and internal marks omitted).

Moreover, the decision "to consign the Chang Seizure pursuant to the Prime Contract rather [than] have ATF destroy the Chang Seizure" is obviously discretionary, even assuming that ATF has "superior knowledge" regarding explosives.  The choice whether to use a contractor to manage seized and forfeited items involves a judgment that weighs practical, economic, and policy considerations.  *See, e.g.*, *Bear Medicine*, 241 F.3d at 1214 (concluding that a decision to entrust timbering operations to a contractor involved weighing of policy judgments, protecting the government from liability under the discretionary function exception); *Alinsky v. United States*, 415 F.3d 639, 648 (7th Cir. 2005) (barring FTCA claims under the discretionary function exemption, where alleged injuries were caused by a contractor's negligence "since the government acted within its discretion to contract those responsibilities out to [the contractor]"); *Andrews v. United States*, 121 F.3d 1430, 1440 (11th Cir. 1997) (applying the discretionary function exception, reasoning that "[t]he law is clear that the government may delegate its safety responsibilities to independent contractors in the absence of federal laws or policies restricting it from doing so").  Indeed, VSE's Third-Party Complaints themselves allege that the contracting is done for economic reasons.  *See* Doc. 9-1, Third-Party Compl. ¶ 21 ("TEOAF depends on

the involvement of such contractors to carry out its functions, as TEOAF does not maintain the necessary internal resources.").

In short, the discretionary function exemption protects the United States' decisions regarding consigning and destroying the Chang Seizure by using contractors. Even assuming such decisions were negligent, they cannot constitute any basis for imposing liability under the FTCA (and thus cannot be a basis for imposing contribution or indemnity to VSE from the United States).

### ii.     Failure to warn (Count Two)

In Count Two, VSE contends that the United States breached a duty to warn its contractors of the dangers of the fireworks that it seized. It incorporates allegations that, because "the knowledge of ICE, CBP and ATF concerning the potentially catastrophic danger posed by the fireworks . . . was superior to the knowledge of VSE," Doc. No. 9-1, Third-Party Compl. ¶ 27, the government "should have advised VSE of the potentially catastrophic danger . . . but failed to do so." *Id.* ¶ 28. Under VSE's theory, the United States thus "breached its duty of care to those potentially harmed by the seized fireworks by failing to provide sufficient warnings of [their] potentially catastrophic danger." *Id.* ¶ 55.

Initially, by itself, this duty-to-warn theory is implausible, at least as to potential liability of the government to these Plaintiffs under the facts of this

case.  *See Haworth v. State*, 60 Haw. 557, 561, 592 P.2d 820, 823 (1979) (stating

general rule that "[t]he employer's duty to provide a safe workplace does not

require him to eliminate risks which are inherent in the work, and he is further

relieved of responsibility for any unnecessarily dangerous conditions of which the

employee has notice"); *Josue v. Isuzu Motors Am., Inc.*, 87 Haw. 413, 417, 958

P.2d 535, 539 (1998) (reiterating, in products liability context, that "faced with a

plain and palpable danger for purposes of a failure to warn claim, a court may

determine such danger to be open and obvious as a matter of law") (citing *Tabieros

v. Clark Equip. Co.*, 85 Haw. 336, 364, 944 P.2d 1279, 1308 (1997)).

        The record is undisputed that Donaldson -- licensed to handle high

explosives under 18 U.S.C. ch. 40 -- prepared the destruction plan for VSE, and

that VSE obtained government approval only after Donaldson obtained the

necessary permit.  VSE and Donaldson provided the government with detailed

safety parameters as part of the plan, not the other way around.  *See* Doc. No. 45-8,

Relacion Decl. Ex. A at 5-6.  Even assuming that the ATF has superior knowledge

of explosives in general, the contractors (and Donaldson in particular) were

required to have specialized expertise in destroying fireworks, and were required to

so train their employees.  Nothing indicates that the government knew of any

hidden dangers in these particular fireworks.  And following VSE's argument to its

logical conclusion would mean that VSE and Donaldson were not qualified to perform their contractual duties.  As the government argues, "VSE . . . cannot genuinely contend that the United States was under any duty to warn it, [Donaldson], or their employees of the very hazards and dangers of which VSE was already aware and had advised the United States of one year prior."  Doc. No. 45, Mot. at 28-29.

In any event, any duty United States had, as a matter of safety, to warn its independent contractors of the dangers of the fireworks was discretionary.  And, under these facts, the two-part test for application of the discretionary function exception is met.

At the first step of the analysis, as before, VSE fails to identify any specific and mandatory statute, regulation, or policy requiring the United States to warn its contractors of the dangers of handling fireworks (knowledge that VSE and Donaldson were required to possess under the terms of the contracts).  Even assuming the government was required to retain some oversight authority, the decisions whether and how to delegate safety responsibility -- *i.e.*, whether to warn or not -- for consigned goods (and for hazardous materials in particular), were discretionary.  *See, e.g.*, *Layton v. United States*, 984 F.2d 1496, 1504 (8th Cir. 1993) (reasoning that, where the Forest Service had delegated safety responsibility

to a contractor and "where there is no regulatory requirement to issue a warning, the government may decide whether or not to warn persons as a matter of its own discretion"); *cf. Varig Airlines*, 467 U.S. at 819-20 ("When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind.").

   And second, any contractual decisions resulting in a failure to warn of safety concerns involved an exercise of judgment that balanced economic or policy considerations.  Numerous decisions have recognized that, in the absence of a specific and mandatory regulation, a failure to warn is discretionary conduct susceptible to policy analysis.  *See Bear Medicine*, 241 F.3d at 1215 ("'[A] general statutory duty to promote safety . . . would not be sufficient.") (citing *Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1026 (9th Cir. 1989)).  "[S]uch decisions require the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding."  *Varig Airlines*, 467 U.S. at 820; *see also In re Consolid. U.S. Atmospheric Testing Litig.*, 820 F.2d 982, 998 (9th Cir. 1987) ("Formulating and issuing warnings requires the government 'to establish priorities . . . [and] is a matter that falls within the discretionary function exception[.]").

Some caselaw in contractual situations, however, has reasoned that

"once the Government has undertaken responsibility for the safety of a project, the

execution of that responsibility is not subject to the discretionary function

exception." *Bear Medicine*, 241 F.3d at 1215; *see also Myers*, 652 F.3d at 1032

(applying same concept).  That is, "[t]he decision to adopt safety precautions may

be based in policy considerations, but the implementation of those precautions is

not." *Myers*, 652 F.3d at 1032 (quoting *Terbush*, 516 F.3d at 1133).  But this

concept does not apply here.  Nothing indicates that the government went beyond

its retained contractual authority to approve the destruction plan (a plan that

Donaldson submitted to VSE, and that VSE in turn, submitted to the government).

That is, the government did not affirmatively undertake responsibility for the

safety of the destruction of the Chang Seizure.  Rather, the government's duty to

warn of the dangers of the fireworks -- even assuming it owed such a duty to

Donaldson's employees -- was delegated to VSE in the prime contract and, by

VSE, to Donaldson.  It is a protected decision, falling within the discretionary

function exception.  *See Williams v. United States*, 50 F.3d 299, 310 (4th Cir.

1995) ("Given that the decision to engage [a contractor] falls within the ambit of

the discretionary function exception, . . . assertions that the United States was

negligent in . . . not posting warning signs cannot prevail because these decisions

are embraced by the overarching decision to engage [the contractor].").

       iii.    Negligence based on "non-delegable duty" (Count Three)

Count Three, similar to the allegations of failure to warn in Count

Two, alleges that the government was negligent in managing the fireworks or

supervising its contract with VSE.  *See* Doc. No. 9-1, Third-Party Compl. ¶ 64

(alleging the United States "failed to exercise ordinary care with respect to the

storage, dismantling, handling or disposal of [its] property, i.e., the Chang Seizure

fireworks").  It relies on a theory that the government was not allowed, as a matter

of state law, to delegate responsibility for safety concerning abnormally dangerous

activities.  *See id.* ¶¶ 60-61 (alleging that handling and disposing of fireworks

constitutes "abnormally dangerous activity" and thus the United States "owed a

non-delegable duty in negligence to exercise ordinary care with respect to its

property").  Nevertheless, such management decisions also fall within the

discretionary function exception.

      First, as analyzed above, VSE has not identified any specific and

mandatory *federal* regulation, statute, or policy precluding the government from

delegating safety functions, including those regarding warnings or supervision.

Likewise, no regulation prevents the United States from allowing VSE, in turn, to

subcontract supervision responsibility.  And many cases hold that government

40

decisions as to how much it will supervise contractors are exercises of discretion. *See, e.g.*, *Bibeau v. Pac. Nw. Research Found., Inc.*, 339 F.3d 942, 946 (9th Cir. 2003) ("[W]ithout some mandate, the decision not to supervise the Heller Experiments was an act of discretion."); *Guile v. United States*, 422 F.3d 221, 231 (5th Cir. 2005) ("Supervision of a contractor's work, including the degree of oversight to exercise, is inherently a discretionary function.").

Absent any *federal* statute, regulation, or policy, VSE argues that *state* law imposes a non-delegable duty on the United States to supervise the destruction of the fireworks. *See Makaneole v. Gampon*, 60 Haw. 501, 777 P.2d 1183 (1989). The parties then debate whether the United States may be liable for breaching non-delegable duties imposed under Hawaii law on employers involved in ultrahazardous activities. Such a state-law duty, however, cannot constitute a mandatory "regulation, statute, or policy" that removes discretion from the analysis. *See, e.g.*, *Camozzi v. Roland/Miller & Hope Consulting Grp.*, 866 F.2d 287, 289 n.7 (9th Cir. 1989) ("The extent of the immunity of the United States to suit is governed by section 2680(a), which cannot be preempted by state law."). It must be "a *federal* statute, regulation, or policy." *Berkovitz*, 486 U.S. at 536 (emphasis added). Moreover, ultimately, the question is subsumed within the discretionary function analysis itself, as the court explains next.

41

To impose a non-delegable duty, VSE looks to *Makaneole* in which the Hawaii Supreme Court adopted the Restatement (Second) of Torts §§ 416[13] and 427.[14]  *Makaneole* sets forth the "peculiar risk" exception to the general rule that "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants" set forth in the Restatement (Second) of Torts § 409 (1965).  That is, under Hawaii law, an employer of an independent contractor generally has a non-delegable duty of reasonable care to a contractor's employees where ultrahazardous activity is involved.  *Makaneole*, 70 Haw. at 504, 777 P.2d at 1185.

Plaintiffs point out, however, that the Restatement (Second) of Torts

---

[13]  Section 416 provides:

> One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

[14]  Section 427 provides:

> One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

describes these sections as imposing "vicarious liability" on the employer:

> The rules stated in the following §§ 416-429 . . . do not rest upon any personal negligence of the employer.  They are rules of vicarious liability, making the employer liable for the negligence of the independent contractor, irrespective of whether the employer has himself been at fault.

Restatement (Second) of Torts § 416-429 intro. note.  *Cf. Haworth*, 60 Haw. at 560, 592 P.2d at 823 ("These duties are considered non-delegable, i.e. the employer is vicariously liable for the negligent failure to perform such duties by one he appointed to perform them.").  But any *state* law imposing vicarious liability on the United States would clearly be inconsistent with the fundamental principle under the FTCA that "the government cannot be held vicariously liable for the negligence of an employee of an independent contractor."  *Yanez*, 63 F.3d at 872.  *See Flynn v. United States*, 631 F.2d 678, 681-82 (10th Cir. 1980) ("Even if the inherently dangerous rule applies and §§ 416 and 427 are read together to impose a liability for a 'non-delegable duty,' the United States may not be held liable on any absolute liability theory.") (citations omitted); *but cf. Nofoa v. United States*, 132 F.3d 39, 1997 WL 796198, at *2-3 (9th Cir. Dec. 30, 1997) (finding, under Hawaii law, "no inconsistency between liability under a non-delegable duty theory and the rule against imposing vicarious liability on the United States") (mem.); *Moffit v. United States*, 978 F.2d 1265, 1992 WL 321029, at *5 (9th Cir.

43

Nov. 4, 1992) (applying *Makaneole* in FTCA suit) (mem.).

Fortunately, the court need not delve further into this thicket. Even assuming the "peculiar risk" doctrine under Hawaii law is not "vicarous liability" (and instead is "direct liability" under the FTCA), the United States would still be protected by the discretionary function exemption if otherwise applicable. *Camozzi* rejected the argument that the discretionary function exception is inapplicable to a theory that the government "breached a nondelegable duty to exercise reasonable care to insure the independent contractor protected its employees from special risks." 866 F.2d at 289 n.7. It reasoned that § 2680(a) "is not overridden by state tort rules, including California's 'peculiar risk' doctrine." *Id.* (citing *Atmospheric Testing*, 820 F.2d at 996-98). "The extent of the immunity of the United States to suit is governed by section 2680(a), which cannot be preempted by state law." *Id.* (citation omitted).

And this concept is well established. *See, e.g.*, *Atmospheric Testing*, 820 F.2d at 996 (distinguishing caselaw holding that the United States can be liable under the FTCA for breaching "a 'non-delegable duty to ensure safety precautions were taken by an independent contractor' where the work to be performed involves special dangers" because the discretionary function exception overrides such a breach); *Roditis v. United States*, 122 F.3d 108, 111 (2d Cir. 1997) ("[A]ny state

44

law nondelegable duty cannot, on its own, override the United States' sovereign

immunity from suits for injuries caused by its independent contractors.") (citing

cases); *Akers v. United States*, 2002 WL 32513820, at *4 (D. Or. Nov. 27, 2002)

(rejecting argument "that the discretionary function exception is inapplicable

because the United States breached nondelegable duties to ensure the safety of

anyone visiting the premises and to protect individuals engaging in inherently

dangerous activities" because "[principles] of [state] law are insufficient to

override the federal government's immunity under § 2680(a)"); *Morris v. United

States*, 2009 WL 2486013, at *6 (D. Ariz. Aug. 12, 2009) ("Section 2680(a) is not

overridden by state tort rules") (quoting *Camozzi*, 866 F.2d at 289 n.7).

In short, discretionary decisions are at issue regardless of state-law

policies (such as a non-delegable duty defined in *Makaneole*), and if those

decisions are otherwise "of the kind that the discretionary function exception was

designed to shield," *Berkovitz*, 486 U.S. at 536, then the exception applies and the

United States cannot be a joint tortfeasor as alleged in Count Three.

And indeed, at the second step of the discretionary function test -- as

with the decision to contract for services -- caselaw has long held that these types

of government decisions regarding delegation and supervision of contractors are

fully protected by the discretionary function exception.  *See, e.g.*, *Varig Airlines*,

45

467 U.S. at 819-20 ("When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind."); *Atmospheric Testing*, 820 F.2d at 995-96 (concluding that negligent failure to supervise contractor's compliance with safety procedures falls within discretionary function exception); *see also Wood v. United States*, 290 F.3d 29, 41 (1st Cir. 2002) ("Decisions regarding the exercise of supervisory authority [over a contract] are traditionally the sort the discretionary function exception was designed to encompass."); *Andrews*, 121 F.3d at 1440 ("The discretionary function exception encompasses government decisions about how and how much to supervise the safety procedures of independent contractors."); *Kirchmann v. United States*, 8 F.3d 1273, 1276-77 (8th Cir. 1993) (reasoning that the government's failure to adequately supervise a contractor's disposal of hazardous waste was a policy consideration protected by the discretionary function exception); *Layton*, 984 F.2d at 1502-03 (similar).

Moreover, as analyzed above with Count Two's allegations regarding the general duty to warn, there are no allegations that the government went beyond its retained contractual authority to approve destruction plans. That is, there is no indication that the government affirmatively undertook other supervisorial responsibilities related to the safety of the destruction of the Chang Seizure that

46

might remove actions from the discretionary function's application. *See Bear Medicine*, 241 F.3d at 1215 ("[O]nce the Government has undertaken responsibility for the safety of a project, the execution of that responsibility is not subject to the discretionary function exception."). Rather, supervisorial responsibilities were delegated to VSE in the prime contract, in an exercise of discretion and by balancing economic and policy factors.[15] Such decisions are protected by the discretionary function exception.

Given the strength and depth of this authority, the court likewise concludes that the government's decisions regarding management and supervision of  VSE's or Donaldson's destruction of the Chang Seizure fall squarely within the discretionary function exception. As with allegations regarding consignment decisions and violations of a duty to warn, VSE's third-party claim in Count Three based on a non-delegable duty is also barred. Accordingly, the court lacks subject matter jurisdiction over the United States.[16]

---

[15]  *See, e.g.*, Doc. No. 1-7, Fallon Decl. Ex. E ¶ C.3 (requiring VSE to "provide all services, materials, supplies, supervision, labor, and equipment, except that specified [in the contract] as Government-furnished, to perform all property management and disposition work set forth in [the contract]"); *Id.* ¶¶ C.3.1.1.3 & C.3.1.1.4 (providing that VSE is "responsible for the performance and conduct of Project Personnel at all times," including "any subcontracted personnel").

[16]  Because the discretionary function applies, the court need not reach whether the "detained goods exception" under 28 U.S.C. § 2680(c) also bars the Third-Amended Complaints against the United States. That is, the court need not reach whether the April 8, 2011 explosion

(continued...)

### 3.     A Claim for "Equitable Indemnity" Necessarily Fails

Finally, although it is not entirely clear whether a claim for "equitable indemnity" is any different than a claim for contribution against a joint tortfeasor (and even if such a claim could somehow survive the loss of jurisdiction over the United States under the discretionary function exemption), the claim otherwise fails. The United States and Plaintiffs point to the prime contract's indemnity provision, which requires VSE to "indemnify and hold the Government harmless" unless "injury, or death is caused solely by the active negligence of the Government or its employees." Doc. No. 1-8, Fallon Decl. Ex. E (pt. 2) ¶ H.17. Under this indemnity provision, the United States cannot be required to indemnify VSE (even assuming it could be a joint tortfeasor) -- this clause plainly requires the opposite. Moreover, the Third-Party Complaints do not allege that the deaths were caused "solely by the active negligence of the Government or its employees." Rather, they only allege that the United States' negligence was a "substantial factor" in causing the incident (if Donaldson was not solely responsible). Doc. No. 9-1, Third-Party Compl. ¶¶ 56, 67-68.

---

[16](...continued)
"relates to" or "arises from the detention" of the seized fireworks and not from "independent activities subsequent to it." *Cervantes v. United States*, 330 F.3d 1186, 1189 (9th Cir. 2003). Likewise, the court need not reach the government's alternate argument that the Third-Party Complaints fail to state a claim under Rule 12(b)(6) standards for lack of a duty under state law.

VSE argues that it is premature to apply the contractual indemnity provision at this motion-to-dismiss stage, contending that this is an issue for summary judgment and that the court may not even consider the contract.  Doc. No. 56, Opp'n at 26.  The court disagrees.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may, however, consider certain materials -- documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice -- without converting the motion to dismiss into a motion for summary judgment."); *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion.").  Indeed, VSE (not the government or the Plaintiffs) proffered the contract in its Notice of Removal, and there is no dispute as to its authenticity.

VSE also argues that the clause is void as against public policy or was procured through "inequality of bargaining power."  Doc. No. 56, Opp'n at 29-30.  Such indemnity and hold harmless provisions, however, are valid under Hawaii law if they are written in "clear and unequivocal language" (as is ¶ H.17 of the VSE contract), especially where the contract is between sophisticated parties.  *See,*

*e.g.*, *Keawe v. Hawaiian Elec. Co.*, 65 Haw. 232, 238, 649 P.2d 1149, 1153 (1982); *Kole v. Amfac, Inc*., 665 F. Supp. 1460, 1463 (D. Haw. 1987).  Even if the government has substantial bargaining power, VSE cannot dispute that it is a sophisticated entity with substantial bargaining power of its own -- it is a publicly-traded company with government contracts exceeding $2 billion, and the contract as issue was valued at well over $25 million.  *See, e.g.*, Doc. No. 40-3, Alapa Decl. Ex. 4 (*Freeman*/*Sprankle*).  The clause is enforceable.

For these reasons (and because the United States retains sovereign immunity), the Third-Party Complaints fail to state a claim for equitable indemnity.  *See In re All Asbestos Cases*, 603 F. Supp. at 606 (requiring the United States to be "guilty of 'active,' 'primary' or 'original' fault, as opposed to the merely 'passive,' 'secondary,' or 'implied' fault of the indemnitee").

///

///

///

///

///

///

///

# V.  **CONCLUSION**

For the foregoing reasons, the United States' Motions to Dismiss, and

the Plaintiffs' Motion to Strike (including related joinders) are GRANTED.  The

Third-Party Complaints are DISMISSED with prejudice against the United States

(but remain as to Donaldson).

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 29, 2012.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Cabalce et al. v. United States et al.*, Civ. No. 12-00373 JMS-RLP; *Kelii et al. v. VSE Corp. et al.*, Civ. No. 12-00376 JMS-RLP; *Freeman et al. v. VSE Corp., et al.*, Civ. No. 12-00377 JMS-RLP; *Irvine et al. v. VSE Corp., et al.*, Civ. No. 12-00391 JMS-RLP; Order Granting (1) Third-Party Defendant United States' Motions to Dismiss Third-Party Complaints, and (2) Plaintiffs' Motions to Strike Third-Party Complaints

51