IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TERRANCE C. CABALCE, ET AL., | ) CIVIL NO. 12-00373 JMS-RLP |
| GEORGE JOSEPH KELII, ET AL., | ) CIVIL NO. 12-00376 JMS-RLP |
| HEATHER FREEMAN, ET AL., | ) CIVIL NO. 12-00377 JMS-RLP |
| CHARLIZE LEAHEY IRVINE, ET | ) CIVIL NO. 12-00391 JMS-RLP |
| AL., | ) (Related Cases) |
| | ) |
| Plaintiffs, | ) CONSOLIDATED ORDER |
| | ) REMANDING ACTIONS TO THE |
| vs. | ) FIRST CIRCUIT COURT OF THE |
| | ) STATE OF HAWAII |
| VSE CORPORATION, ET AL., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |
| | ) |
| VSE CORPORATION, | ) |
| | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| DONALDSON ENTERPRISES, INC., | ) |
| | ) |
| Third-Party Defendant. | ) |
| _____ | ) |

## CONSOLIDATED ORDER REMANDING ACTIONS TO THE FIRST CIRCUIT COURT OF THE STATE OF HAWAII

## I. INTRODUCTION

This consolidated Order rules on Motions to Remand filed by

Plaintiffs in four related actions removed to this court by Defendant VSE

Corporation ("VSE"): *Cabalce, et al. v. VSE Corp., et al.*, Civ. No. 12-00373 JMS-RLP ("*Cabalce*"); *Kelii, et al. v. VSE Corp., et al.*, Civ. No. 12-00376 JMS-RLP ("*Kelii*"); *Freeman, et al. v. VSE Corp., et al.*, Civ. No. 12-00377 JMS-RLP ("*Freeman/Sprankle*"); and *Irvine, et al. v. VSE Corp., et al.*, Civ. No. 12-00391 JMS-RLP ("*Irvine*").   The cases are not consolidated, but instead were assigned to a single judge as related cases under Local Rule 40.2.   Because most of the relevant pleadings and arguments are identical, it is appropriate to issue this consolidated Order in each action.   Based on the following, the Motions are GRANTED, and all four actions are remanded to the First Circuit Court of the State of Hawaii ("State Court").

## II.  BACKGROUND

### A.    Factual Background and the November 29, 2012 Order

On November 29, 2012, this court issued an Order Granting (1) Third-Party Defendant United States' Motions to Dismiss, and (2) Plaintiffs' Motions to Strike Third-Party Complaints ("Nov. 29, 2012 Order").   Doc. No. 88 (*Cabalce*),[1] *Cabalce v. VSE Corp.*, 2012 WL 5996548 (D. Haw. Nov. 29, 2012).   The Nov. 29, 2012 Order extensively set forth the factual background of these actions, which

---

[1]  Unless otherwise indicated, citations to court electronic docket numbers refer to the *Cabalce* docket.

arose from an April 8, 2011 fire and explosion in which Donaldson Enterprises, Inc. ("Donaldson") employees Bryan Cabalce, Justin Kelii, Robert Freeman, Neil Sprankle, and Robert Leahey were killed while working and handling a large cache of government-seized fireworks in or near a storage facility.  Because the parties are well aware of the background as detailed in the Nov. 29, 2012 Order, the court does not repeat those facts here.  Nevertheless, many of the rulings the court made in determining whether to dismiss the Third-Party Complaints against the United States are important -- indeed, dispositive -- in analyzing whether these actions should be remanded to State Court for lack of federal subject matter jurisdiction.[2] The court thus begins by summarizing relevant rulings made in the Nov. 29, 2012 Order.

The Nov. 29, 2012 Order dismissed VSE's Third-Party Complaints against the United States for lack of subject matter jurisdiction -- the United States cannot be liable under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)

---

[2]  The court recognized that resolving the prior Motions to Dismiss Third-Party Complaints against the United States could impact the analysis as to whether remand is appropriate, and thus the court resolved those Motions first.  *See* Doc. No. 49 (*Cabalce*) (continuing hearing on Motions to Remand to first resolve the then-pending Motions to Dismiss Third Party Complaints).  If the court had subject matter jurisdiction over the United States as a potential joint-tortfeasor, then the Motions to Remand would have been moot.  Likewise, as is apparent here, in determining that the United States was not a proper Third-Party Defendant, the court necessarily analyzed the specifics of the government's contract with VSE, and the degree of control the government had over VSE's allegedly tortious conduct as to Plaintiffs.  In short, the Nov. 29, 2012 Order is an important prerequisite for the present Motions.

*et seq.*, for contribution or indemnity under the theories pled by Plaintiffs against VSE (and the other Defendants) in the Complaints, and as asserted by VSE against the United States in its Third-Party Complaints.  That is, under Federal Rule of Civil Procedure 14(a)(1), the United States cannot be liable to VSE "for all or part of the claim against" VSE.  Doc. No. 88, Nov. 29, 2012 Order at 22, 2012 WL 5996548 at *9.  This conclusion was based on several rulings regarding the nature of the contractual relationship between VSE, its subcontractor Donaldson, and the Treasury Executive Office for Asset Forfeiture ("the government" or "the United States").

First, this court ruled that VSE was an "independent contractor" for purposes of the FTCA.  "Under the 'independent contractor' exception [to the FTCA], the United States cannot be liable for a contractor's acts unless it exercises 'federal authority to control and supervise the "detailed physical performance" and "day to day operations" of the contractor.'"  *Id.* at 26-27, 2012 WL 5996548 at *10 (quoting *Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005)).  This court reasoned:

> Neither the Complaints nor the Third-Party Complaints allege (and the record contains no such evidence) that *any* government employee or agency controlled or substantially supervised the day-to-day destruction of the fireworks.  Rather, all indications are that Donaldson and VSE were performing under their respective contracts.

4

No one disputes that Donaldson and VSE devised and prepared the destruction plans (both the plan that [the government] approved on April 28, 2010, and the modified procedure discussed between Donaldson and VSE on March 28, 2011). *See* Doc. No. 45-3, Watson Decl. Ex. A at 5-6; Doc. No. 45-6, Watson Decl. Ex. D. And, indeed, the VSE prime contract specifically declares that "[VSE] is 'an Independent Contractor' and shall obtain all necessary insurance to protect Project Personnel from liability arising out of the Contract." Doc. No. 1-8, Fallon Decl. Ex. E (pt. 2) ¶ H.17.

*Id.* at 27-28, 2012 WL 5996548 at *11. This court further explained:

At most, employees of [the government] issued disposition instructions, ordered fireworks to be destroyed, and approved a destruction plan pursuant to retained authority under the prime contract. *See also* Doc. No. 56-6, O'Neill Decl. Ex. 5 (providing evidence of a visit by government employees to the storage facility). But even very specific governmental contractual authority is generally insufficient to render the United States liable for acts of its contractors. *See Autery*, 424 F.3d at 957 ("Contractual provisions directing detailed performance generally do not abrogate the contractor exception. The United States may 'fix specific and precise conditions to implement federal objectives' without becoming liable for an independent contractor's negligence.") (quoting *United States v. Orleans*, 425 U.S. 807, 816 (1976)).

*Id.* at 28, 2012 WL 5996548 at *11. That is, VSE was not an agent of the United States, and thus the United States could not be vicariously liable for any negligence on the part of VSE. As a result, the Third-Party Complaints failed unless the United States could be found liable for its own alleged acts. *Id.*

5

Next, as to that question of potential government liability under the FTCA for its own acts, this court ruled that the United States was protected by the FTCA's discretionary function exemption, 28 U.S.C. § 2680(a). Specifically, the government's economic and policy-based decisions regarding consigning the fireworks, and contracting for their destruction (after retaining samples as evidence for use in prosecution), were purely discretionary. *Id.* at 33, 2012 WL 5996548 at *13. This is because

> VSE has not proffered (and the court has not found) any directive such as a statute, regulation, or policy that precludes preservation of fireworks for evidentiary value, or that requires destroying seized explosives within a certain period of time. Nor has it identified any requirement that precludes the government's use of a contractor to handle and destroy seized fireworks or explosives.

*Id.* And as for the claim that the United States breached a duty to warn or supervise, such acts likewise involved discretionary, policy-based, decisions. The Nov. 29, 2012 Order reasoned:

> The record is undisputed that Donaldson -- licensed to handle high explosives under 18 U.S.C. ch. 40 -- prepared the destruction plan for VSE, and that VSE obtained government approval only after Donaldson obtained the necessary permit. VSE and Donaldson provided the government with detailed safety parameters as part of the plan, not the other way around. *See* Doc. No. 45-8, Relacion Decl. Ex. A at 5-6. Even assuming that the [Bureau of Alcohol, Tobacco, and Firearms] has

6

> superior knowledge of explosives in general, the
> contractors (and Donaldson in particular) were required
> to have specialized expertise in destroying fireworks, and
> were required to so train their employees.  Nothing
> indicates that the government knew of any hidden
> dangers in these particular fireworks. . . .  As the
> government argues, "VSE . . . cannot genuinely contend
> that the United States was under any duty to warn it,
> [Donaldson], or their employees of the very hazards and
> dangers of which VSE was already aware and had
> advised the United States of one year prior."  Doc. No.
> 45, Mot. at 28-29.

*Id.* at 36-37, 2012 WL 5996548 at *14.  In this regard, it is important that

> [n]othing indicates that the government went beyond its
> retained contractual authority to approve the destruction
> plan (a plan that Donaldson submitted to VSE, and that
> VSE in turn, submitted to the government).  That is, the
> government did not affirmatively undertake
> responsibility for the safety of the destruction of the
> Chang Seizure.  Rather, the government's duty to warn of
> the dangers of the fireworks -- even assuming it owed
> such a duty to Donaldson's employees -- was delegated
> to VSE in the prime contract and, by VSE, to Donaldson.

*Id.* at 39, 2012 WL 5996548 at *15.

Finally, as to claims based on a "non-delegable" duty under Hawaii

law -- claims that the government improperly managed inherently dangerous

fireworks or wrongfully supervised its contract with VSE -- this court also

determined that such decisions were discretionary.  *Id.* at 40, 2012 WL 5996548 at

*16.  Moreover, such strict liability theories under state law are inconsistent with

7

the FTCA's waiver of sovereign immunity, which is limited to claims of

negligence by government employees. *Id.* at 41, 2012 WL 5996548 at *16 ("Such

a state-law duty, however, cannot constitute a mandatory 'regulation, statute, or

policy' that removes discretion from the analysis."); *see also, e.g.*, *Laird v. Nelms*,

406 U.S. 797, 802-03 (1972) ("[T]he Federal Tort Claims Act did not authorize

suit against the Government on claims based on strict liability for ultrahazardous

activity.") (citation omitted).  This court reasoned that:

> VSE has not identified any specific and mandatory
> *federal* regulation, statute, or policy precluding the
> government from delegating safety functions, including
> those regarding warnings or supervision.  Likewise, no
> regulation prevents the United States from allowing VSE,
> in turn, to subcontract supervision responsibility.

Nov. 29, 2012 Order at 40, 2012 WL 5996548 at *16.  Absent any federal

requirement, the government's economic and policy-based acts were discretionary,

and state law non-delegable duty concepts cannot abrogate this federal exemption

from the FTCA's waiver of sovereign immunity.  *Id.* at 44, 2012 WL 5996548 at

*17.  This court reiterated that:

> there are no allegations that the government went beyond
> its retained contractual authority to approve destruction
> plans. That is, there is no indication that the government
> affirmatively undertook other supervisorial
> responsibilities related to the safety of the destruction of
> the Chang Seizure that might remove actions from the
> discretionary function's application.  *See* [*Bear Medicine*

> *v. United States*, 241 F.3d 1208, 1215 (9th Cir. 2001)]
> ("[O]nce the Government has undertaken responsibility
> for the safety of a project, the execution of that
> responsibility is not subject to the discretionary function
> exception."). Rather, supervisorial responsibilities were
> delegated to VSE in the prime contract, in an exercise of
> discretion and by balancing economic and policy factors.

*Id.* at 46-47, 2012 WL 5996548 at *18 (noting evidence indicating that

supervisorial responsibilities were delegated to VSE).

## B.   Procedural Background

On May 24, 2012, these actions were filed in State Court asserting

state-law claims against VSE and other Defendants for negligence, wrongful death,

ultrahazardous activity, and premises liability, based on the deaths of the

Donaldson employees in the April 8, 2011 incident. *Id.* at 4, 2012 WL 5996548 at

*5. VSE removed the actions on June 29, 2012 (*Cablace*), July 2, 2012 (*Kelii* and

*Freeman*/*Sprankle*), and July 12, 2012 (*Irvine*), and filed Third-Party Complaints

against the United States and Donaldson. *Id.*, 2012 WL 5996548 at *6.

Plaintiffs filed Motions to Remand on July 25, 2012 (*Cabalce*), July

31, 2012 (*Freeman*/*Sprankle*), August 1, 2012 (*Kelii*), and August 3, 2012 (*Irvine*).

A hearing on the Motions was continued until December 17, 2012, to allow the

court to first resolve whether subject matter jurisdiction existed over the United

States as alleged in the Third-Party Complaints. Doc. No. 49. VSE filed a

consolidated Opposition to the Motions to Remand on November 26, 2012.  Doc.
No. 83.

On November 29, 2012, the court dismissed the Third-Party
Complaints against the United States for lack of jurisdiction.  Plaintiffs then filed
individual Replies as to the Motions to Remand on December 3, 2012.  Doc. Nos.
91 (*Cabalce*); 71 (*Kelii*); 83 (*Freeman/Sprankle*); & 73 (*Irvine*).  The Motions
were heard on December 17, 2012.  At the hearing, the court requested
supplemental briefing on the jurisdictional issues.  On January 5, 2013, VSE filed a
Notice indicating it was no longer basing subject matter jurisdiction on 28 U.S.C.
§ 1332.  *See* Doc. No. 98 (*Cabalce*) (stating that VSE "withdraws" without
prejudice VSE's notice of removal "to the extent such notice relies on 28 U.S.C.
§ 1332").  On January 7, 2013, VSE filed a Supplemental Memorandum, and
Plaintiffs filed a Joint Supplemental Brief.  Doc. No. 100, Doc. No. 80 (*Kelii*).

## III.  <u>STANDARD OF REVIEW</u>

Under 28 U.S.C. § 1447(c), a party may bring a motion to remand an
action removed from state to federal court.  Ordinarily, "[r]emoval statutes are to
be strictly construed, and any doubts as to the right of removal must be resolved in
favor of remanding to state court."  *Durham v. Lockheed Martin Corp*., 445 F.3d
1247, 1252 (9th Cir. 2006).  But where, as here, removal is based on 28 U.S.C.

§ 1442(a)(1), the Supreme Court has mandated that § 1442(a)(1) be "liberally construed to give full effect to the purposes for which [it was] enacted." *Id.* (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)).  Thus, "when federal officers and their agents are seeking a federal forum, [courts] are to interpret section 1442 broadly in favor of removal." *Id.*  Likewise, unlike with other removal statues, under § 1442 not all defendants need join in a notice of removal. *See Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981) ("[Section] 1442 represents an exception to the general rule (under §§ 1441 and 1446) that all defendants must join in the removal petition."). That is, one defendant in a multi-defendant case can unilaterally remove the entire action if it meets the requirements of § 1442.  *See id.*[3]

## IV. DISCUSSION

In its Notices of Removal, VSE cites three grounds for removing these actions.  First, although several Defendants have Hawaii citizenship (and all Plaintiffs are Hawaii residents), VSE asserted complete diversity of citizenship under 28 U.S.C. § 1332 as a basis for removal, contending that the citizenship of those Defendants should be disregarded as having been "fraudulently joined" for

---

[3] Thus, the court rejects the argument that removal was improper for failure of all Defendants to consent to removal.  *See* Doc. No. 83 (*Freeman/Sprankle*), Reply at 5 (arguing that these actions should be remanded for violating a unanimity requirement under 28 U.S.C. § 1441).

purposes of destroying diversity.  *See* Doc. No. 1, Notice of Removal ¶ 7 (citing

*Emrich v. Touche Ross & Co.*, 846 F.2d 1190 (9th Cir. 1998)).  As set forth above,

VSE has since withdrawn that basis for removal, indicating it no longer contests

that the parties are non-diverse for purposes of § 1332.  Doc. No. 98 (*Cabalce*).

Thus, VSE now relies on its other two grounds for removal -- two

different federal defenses:  (1) a "government contractor defense" under *Boyle v.*

*United Technologies Corp.*, 487 U.S. 500, 511-12 (1988), Doc. No. 1, Notice of

Removal ¶ 50, and (2) "derivative sovereign immunity . . . as to Plaintiffs' claims

based on strict liability," *id.* ¶ 46, applying a doctrine derived from *Yearsley v.*

*W.A. Ross Construction Co.*, 309 U.S. 18 (1940).  It asserts those defenses under

28 U.S.C. § 1442(a)(1), the Federal Officer Removal Statute.  Doc. No. 1, Notice

of Removal ¶¶ 14-50.  Section 1442(a)(1) provides, in pertinent part, that a civil

action commenced in state court is removable when "any officer (*or any person*

*acting under that officer*) of the United States or of any agency thereof, [is sued

for] any act under color of such office."  (Emphasis added).

## A.    The Framework for Analyzing VSE's Remaining Basis for Removal -- 28 U.S.C. § 1442(a)(1)

Before proceeding to address § 1442(a)(1), the court explains the

framework it applies in analyzing VSE's arguments.  Under Ninth Circuit caselaw,

"a party seeking removal under section 1442 must demonstrate that (a) it is a

'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Durham*, 445 F.3d at 1251 (citing *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999), and *Mesa v. California*, 489 U.S. 121, 124-25 (1989)).  Under this statute, "suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Acker*, 527 U.S. at 431.

But the court does not simply apply the prongs of *Durham*'s three-part test mechanically and in isolation.  Other Circuits phrase the analysis differently, although articulating the same basic rationale.  For instance, they focus not necessarily on whether a "causal nexus" exists, but on whether a contractor is "acting under" a federal agent or acting "under color of" a federal office.  As an example, the Eighth Circuit recently stated:

> Four elements are required for removal under § 1442(a)(1):  (1) a defendant has acted under the direction of a federal officer, (2) there was a causal connection between the defendant's actions and the official authority, (3) the defendant has a colorable federal defense to the plaintiff's claims, and (4) the defendant is a "person," within the meaning of the statute.

*Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1230 (8th Cir. 2012).  *Jacks* explained that

> [t]o satisfy the "acted under" requirement of
> § 1442(a)(1), a private person's actions "must involve an
> effort to *assist*, or to help *carry out*, the duties or tasks of
> the federal superior."  It is not enough that a private
> person or entity merely operate in an area directed,
> supervised and monitored by a federal regulatory agency
> or other such federal entity.

*Id.* (quoting *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 (2007)).

In *Bennett v. MIS Corporation*, 607 F.3d 1076 (6th Cir. 2010) (en

banc), the Sixth Circuit set forth this three-pronged test:

> First, [the contractor] must establish that it is a "person"
> within the meaning of the statute who "acted under a
> federal officer."  Second, [it] must demonstrate that it
> performed the actions for which it is being sued "under
> color of federal office."  Third, [it] must show that it
> raised a colorable federal defense.

*Id.* at 1085 (citing § 1442(a)(1)) (editorial marks omitted).  And the Second

Circuit, adopting a test similar to *Bennett*, observed that the second prong ("under

color of federal office") "has come to be known as the causation requirement."

*Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008).  It describes "[t]he

hurdle erected by this [causation] requirement as quite low," meaning that a

contractor "must demonstrate that the acts for which they are being sued . . .

occurred *because of* what they were asked to do by the Government."  *Id.*  And as

for the "acting under" prong, *Isaacson* adds that "there must be a 'special

relationship' between" the contractor and a federal officer, such as "close

14

supervision of the private entity by the Government." *Id*. (citing *Watson*, 551 U.S. at 157).

It is thus apparent that *Durham* simply sets forth a basic framework of factors a court considers in determining -- under any possible factual scenario -- whether any "officer (or any person acting under that officer) of the United States or of any agency thereof" may invoke federal jurisdiction to have a "colorable federal defense" litigated in a federal forum. *See, e.g.*, *Mesa*, 489 U.S. at 133 (recounting the history and purposes of § 1442(a)(1)). That is, the factors do not apply with mathematical precision, and they may not all apply in every case -- context matters.

The court therefore begins with the essential § 1442(a)(1) requirement -- however articulated -- that there be a "causal nexus" between VSE's alleged actions "taken pursuant to a federal officer's directions, and [Plaintiffs'] claims." *Durham*, 445 F.3d at 1251. And, even though the court ultimately finds no such nexus in this case (and thus might well end the inquiry at that point), mindful that various courts emphasize different terms, the court proceeds to the next step. That is, the court then analyzes both proffered federal defenses -- "government contractor" under *Boyle*, and "derivative sovereign immunity" under *Yearsley* -- in turn.

15

**B.     The Elements of Removal Under § 1442(a)(1)**

*1.     "Causal Nexus"*[4]

The right of removal under § 1442(a)(1) may extend to private

"persons" who are "acting under" a federal officer or agency.  The actor "must

*both* raise a colorable federal defense, *and* establish that the suit is '*for* a[n] act

under color of office.'  To satisfy the latter requirement, the officer must show a

nexus, a 'causal connection' between the charged conduct and asserted official

authority."  *Acker*, 527 U.S. at 431 (quoting *Willingham v. Morgan*, 395 U.S. 402,

409 (1969) (some emphasis added)).  The removing defendant must "by direct

averment exclude the possibility that [the state action] was based on acts or

conduct of his not justified by his federal duty."  *Mesa*, 489 U.S. at 132.

The "causal nexus" between a federal officer's directions and the

private actor "must be predicated on a showing that the acts forming the basis of

the state suit were performed pursuant to an officer's 'direct orders or

comprehensive and detailed regulations.'"  *Freiberg v. Swinerton & Walberg Prop.*

*Servs.*, 245 F. Supp. 2d 1144, 1152 (D. Colo. 2002) (quoting *Ryan v. Dow Chem.*

*Co.*, 781 F. Supp. 934, 947 (E.D.N.Y. 1992)).  "It is not enough to prove only that

---

[4]  As to the first element, the parties do not dispute that VSE is a "person" for purposes of the federal officer removal statute.  Indeed, Congress amended § 1442(a)(1) specifically to allow an "agency" (rather than just an "officer") to remove an action under this statute.  *See Neb. ex rel. Dep't of Soc. Servs. v. Bentson*, 146 F.3d 676, 678 (9th Cir. 1998).

'the relevant acts occurred under the general auspices of a federal office or officer.'" *Id.* "The official must have direct and detailed control over the defendant." *Id.* (citing *Good v. Armstrong World Indus.*, 914 F. Supp. 1125, 1128 (E.D. Pa. 1996) ("Removal must be predicated upon a showing that the acts forming the basis of the state suit were performed pursuant to an officer's direct orders or comprehensive and detailed regulations.")).

These are well-accepted factors for analyzing the meaning of "causal nexus" in this context. *See, e.g.*, *Arness v. Boeing N. Am., Inc.*, 997 F. Supp. 1268, 1273 (C.D. Cal. 1998) ("Most courts have held that the federal officer must have 'direct and detailed control' over the defendant. . . . [I]f the corporation establishes only that the relevant acts occurred under the general auspices of federal direction then it is not entitled to § 1442(a)(1) removal."); *see also Thompson v. Crane Co.*, 2012 WL 1344453, at *27 (D. Haw. Apr. 17, 2012) (quoting *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 784-85 (E.D. Pa. 2010), for the same factors)).

Applying the factors, VSE cannot meet this "causal nexus" prong. The court has already concluded as a matter of law that VSE was acting independently -- it was an "independent contractor" for purposes of the FTCA, operating without day-to-day control or supervision by the government of the means and methods of destruction of the fireworks. Doc. No. 88, Nov. 29, 2012

Order at 27-28, 2012 WL 5996548 at *11.  To repeat, "[n]o one disputes that Donaldson and VSE devised and prepared the destruction plans (both the plan that [the government] approved on April 28, 2010, and the modified procedure discussed between Donaldson and VSE on March 28, 2011)."  *Id.*  "At most, employees of [the government] issued disposition instructions, ordered fireworks to be destroyed, and approved a destruction plan pursuant to retained authority under the prime contract."  *Id.* at 28, 2012 WL 5996548 at *11.  As quoted above,

> The record is undisputed that Donaldson -- licensed to
> handle high explosives under 18 U.S.C. ch. 40 --
> prepared the destruction plan for VSE, and that VSE
> obtained government approval only after Donaldson
> obtained the necessary permit.  VSE and Donaldson
> provided the government with detailed safety parameters
> as part of the plan, not the other way around.

*Id.* at 36, 2012 WL 5996548 at *14.  Thus, VSE and Donaldson were not acting under "direct orders or comprehensive and detailed regulations" of the government.  *Freiberg*, 245 F. Supp. 2d at 1152.  The government did not have "direct and detailed control" over VSE or Donaldson.  *Good*, 914 F. Supp. at 1128. At most, VSE can "establish[] only that the relevant acts occurred under the general auspices of federal direction."  *Arness*, 997 F. Supp. at 1273.  As an independent contractor, VSE cannot "exclude the possibility that the [removed action] was based on acts or conduct of [VSE] not justified by [VSE's] federal

18

duty." *Mesa*, 489 U.S. at 132.  In short, VSE was not "acting under" a government officer or agency, and there is no "causal nexus."

### 2.    Colorable Federal Defenses

At the next step, VSE asserts two distinct federal defenses under § 1442(a)(1) -- (1) a government contractor defense derived from *Boyle*, and (2) derivative sovereign immunity that many courts indicate derived from *Yearsley*, and cases interpreting *Yearsley*.  This has become a complex area of law. Specifically, it is unclear whether a "derivative sovereign immunity defense" (or a "shared immunity defense") derived from *Yearsley* is truly distinct from a "government contractor defense" derived from *Boyle*.  *Compare In re KBR, Inc.*, 736 F. Supp. 2d 954, 965 (D. Md. 2010) ("Clearly, the Supreme Court viewed the concept of derivative sovereign immunity, at least as it derives from the immunity of federal officials, as separate and distinct from the preemption-based government contractor defense recognized in *Boyle*."), *with Bixby v. KBR, Inc*., 748 F. Supp. 2d 1224, 1240 (D. Or. 2010) ("Under the so-called 'government contractor defense,' where certain conditions are met[,] a government contractor enjoys derivative sovereign immunity against tort actions arising out of the contractor's provision of

services to the government.").[5]  Construing VSE's Notices of Removal based on

§ 1442(a)(1) "liberally" and "broadly in favor of removal," *Durham*, 445 F.3d at

1252, the court proceeds to analyze both.

       *a.*     *Government contractor defense under* Boyle

       *Leite v. Crane Company*, 868 F. Supp. 2d 1023 (D. Haw. 2012),

analyzed at length the government contractor defense as derived from *Boyle*.  "The

government contractor defense 'protects contractors from tort liability that arises as

a result of the contractor's 'compli[ance] with the specifications of a federal

government contract.'"  *Id.* at 1029 (quoting *Getz v. Boeing Co.*, 654 F.3d 852, 860

(9th Cir. 2011)).  "This defense 'displaces state law only when the Government,

making a discretionary, safety-related military procurement decision contrary to

the requirements of state law, incorporates this decision into a military contractor's

contractual obligations, thereby limiting the contractor's ability to accommodate

safety in a different fashion.'"  *Id.* (quoting *In re Haw. Fed. Asbestos Cases*, 960

F.2d 806, 813 (9th Cir. 1992)).  Under *Boyle*, "a contractor establishes this defense

---

[5]  *See also, e.g.*, *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1001 (9th Cir. 2008) (observing that *Yearsley* "arguably planted the seeds of the government contractor defense" and stating that "[n]othing in *Yearsley* extended immunity to military contractors exercising a discretionary governmental function"); *Griffin v. JTSI, Inc.*, 654 F. Supp. 2d 1122, 1137 & n.30 (D. Haw. 2008) (stating that *Yearsley* was "the first case to apply some form of the government contractor defense" and noting that "[s]ince *Boyle*, the Courts of Appeals have varied greatly in their range of application of the defense").

where: '(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.'" *Id.* (quoting *Boyle*, 487 U.S. at 512).

   Initially, Plaintiffs argue that a government contractor defense is "only available to contractors who design and manufacture military equipment." *See, e.g.*, Doc. No. 19-1 (*Kelii*), Mot. at 19 (quoting *Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 746 n.1 (9th Cir. 1997)). Nevertheless, there is a significant split in authority on this question. *See Bennett*, 607 F.3d at 1089 ("[T]he application of the government contractor defense has found support in the non-military context, as well as in the performance contract context.") (citing *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1333-34 (11th Cir. 2003) (finding the defense applicable where a private service contractor faced a negligent-maintenance contract lawsuit), and *Carley v. Wheeled Coach*, 991 F.2d 1117, 1123 (3d Cir. 1993) (applying the defense to non-military contractors)). *See also Boruski v. United States*, 803 F.2d 1421, 1430 (7th Cir. 1986) (citing with approval the Eleventh Circuit's rationale that "[b]oth the history of the defense and its general rationale lead us to the conclusion that it would be illogical to limit the availability of the defense solely to 'military' contractors"). Moreover, as noted

21

above, the Ninth Circuit has recognized that *Boyle* is related to, if not derived from,

*Yearsley* -- and *Yearsley* did not arise from a military contract.  *See In re Hanford*

*Nuclear Reservation Litig.*, 534 F.3d 986, 1001 (9th Cir. 2008).

But, even if this government contractor defense can apply in this

civilian services context, it nevertheless fails here.  For the defense to apply in this

duty to warn context,

> a contractor establishes this defense where "(1) the
> government exercised its discretion and approved certain
> warnings; (2) the contractor provided the warnings
> required by the government; [and] (3) the contractor
> warned the government about dangers in the equipment's
> use that were known to the contractor but not to the
> government."  In other words, "the contractor must
> demonstrate that the government "approved reasonably
> precise specifications" thereby limiting the contractor's
> "ability to comply with [its] duty to warn."

*Leite*, 868 F. Supp. 2d at 1029 (quoting *Getz*, 654 F.3d at 866).  Here (as with the

"causal nexus" prong analyzed above) it is dispositive that the court has already

determined that there were no "reasonably precise specifications" that "limited

[VSE's] ability to comply with" a duty to warn.  *Id.*[6]  VSE was not acting under

---

[6] *Leite* recognized that "[w]here a government contractor is the defendant, the causal
nexus requirement 'is closely related to evidence supporting a colorable federal defense' because
both elements require the 'defendant to show that it acted at the federal government's
command.'"  868 F. Supp. 2d at 1041 (quoting *Hagen*, 739 F. Supp. 2d at 785) (some editorial
marks omitted).  "[T]he causal nexus analysis 'is essentially the same as that associated with the
colorable defense requirement.'"  *Id.* (quoting *Hagen*, 739 F. Supp. 2d at 785 ) (square brackets

(continued...)

any direct orders or detailed regulations from the government.  Unlike in *Leite*, no

detailed specifications dictated the manner and method of the contractor's

performance -- in this case, how to destroy the fireworks.  Instead, VSE and

Donaldson had broad discretion to develop and implement the way they would

perform their contractual duties.  Again,

> [t]he record is undisputed that Donaldson -- licensed to
> handle high explosives under 18 U.S.C. ch. 40 --
> prepared the destruction plan for VSE, and that VSE
> obtained government approval only after Donaldson
> obtained the necessary permit.  VSE and Donaldson
> provided the government with detailed safety parameters
> as part of the plan, not the other way around.

Doc. No. 88, Nov. 29, 2012 Order at 36-37, 2012 WL 5996548 at *14.  "The

government was relying on the expertise of defendants and not vice versa."  *In re*

*Hanford*, 534 F.3d at 1007.  It follows that a *Boyle* defense is not colorable.

       *b.*   *Derivative sovereign immunity under* Yearsley *and its progeny*

Lastly, VSE relies on a "derivative" or "shared" immunity doctrine

under *Yearsley* and subsequent caselaw.  *Yearsley* analyzed whether a federal

contractor could be held liable for damage caused by the construction of dikes in

the Missouri River.  *See* 309 U.S. at 19-20.  It was undisputed that the federal

---

     [6](...continued)
omitted).

government directed the project, which was authorized by an Act of Congress. *Id.* at 19. *Yearsley* concluded that the contractor could not be held liable, reasoning that when the "authority to carry out the project was validly conferred . . . there is no liability on the part of the contractor for executing [Congress'] will." *Id.* at 20-21. But it recognized that "[w]here an agent or officer of the Government purporting to act on its behalf has been held to be liable for his conduct causing injury to another, the ground of liability has been found to be either that he exceeded his authority or that it was not validly conferred." *Id.* at 21.

Many federal courts have since construed *Yearsley* as creating a distinct "doctrine of derivative sovereign immunity." *McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1343 (11th Cir. 2007). *See, e.g.*, *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000) (holding that a private contractor is entitled to derivative sovereign immunity for following commands of a foreign sovereign); *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009) (referring to the doctrine of "shared immunity"); *In re World Trade Center Disaster Site Litig.*, 521 F.3d 169, 196 (2d Cir. 2008) (discussing "derivative immunity"); *Myers v. United States*, 323 F.2d 580, 583 (9th Cir. 1963) ("To the extent that the work performed by McLaughlin, Inc., was done under its contract with the Bureau of Public Lands, and in conformity with the terms of said contract,

24

no liability can be imposed upon it for any damages claimed to have been suffered by the appellants.") (citing *Yearsley*).

"The *Yearsley* doctrine is subject to two important limitations.  First, 'a key premise of *Yearsley*, and one that has been reiterated by [various federal courts] is that the contractor was following the sovereign's directives.'" *In re Fort Totten Metrorail Cases*, ___ F. Supp. 2d ___, 2012 WL 3834877, at *18 (D.D.C. Sept. 5, 2012) (quoting *Chesney v. Tenn. Valley Auth.*, 782 F. Supp. 2d 570, 582 (E.D. Tenn. 2011)).  *Yearsley* "acknowledged that an agent or officer of the Government purporting to act on its behalf, but in actuality exceeding his authority, shall be liable for his conduct causing injury to another." *Id.* (citations omitted).  "Second, derivative sovereign immunity is not available to contractors who act negligently in performing their obligations under the contract." *Id.* (citing *Ackerson*, 589 F.3d at 207 (stating that a contractor that commits a "separate act of negligence" is not entitled to derivative sovereign immunity under *Yearsley*), and *City of Worcester v. HCA Mgmt. Co.*, 753 F. Supp. 31, 38 (D. Mass. 1990) (reiterating that *Yearsley* does not apply "when a private corporation who performs governmental duties pursuant to contractual authority from the government is sued for negligence in the performance of these duties")).  These limitations recognize that "the government does not become the conduit of its immunity in suits against

25

its agents or instrumentalities merely because they do its work." *Keifer & Keifer v. Reconstruction Fin. Corp.*, 306 U.S. 381, 388 (1939) (citations omitted). Thus, *Yearsley* does not abrogate "the principle that an agent is liable for his own torts [which] 'is an ancient one and applies even to certain acts of public officers or public instrumentalities.'" *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687 (1949) (quoting *Brady v. Roosevelt S.S. Co.*, 317 U.S. 575, 580 (1943)).

VSE relies on caselaw such as *Butters*, 225 F.3d at 467, and *City of Worcester*, 753 F. Supp. at 38, for a broad application of *Yearsley*. In response, Plaintiffs assert that derivative sovereign immunity, as a distinct doctrine, does not apply in the Ninth Circuit. *See Rodriguez v. Lockheed Martin Corp.*, 627 F.3d 1259, 1265 (9th Cir. 2010) ("Although the source of the government contractor defense is the United States' sovereign immunity, we have explicitly stated that 'the government contractor defense does not confer sovereign immunity on contractors.'") (quoting *United States ex rel. Ali v. Daniel, Mann, Johnson & Mendenhall*, 355 F.3d 1140, 1147 (9th Cir. 2004) ("*DMJM*")).[7] But it is far from clear whether *Rodriguez* and *DMJM* considered *Yearsley* as distinct from a

---

[7] *See also In re Hanford*, 534 F.3d at 1001 ("Nothing in *Yearsley* extended immunity to military contractors exercising a discretionary governmental function.").

26

"government contractor defense" under *Boyle*.

Regardless, both defenses have a similar rationale.  *See, e.g.*, *Chesney*, 782 F. Supp. 2d at 581 ("As the Sixth Circuit acknowledged in *Bennett*, derivative immunity of *Yearsley* and the government contractor defense of *Boyle* address the same federal interest of a contractor's performance of a government contract.").

*Bixby* persuasively summarized the underlying common logic as follows:

> Where the government hires a contractor to perform a given task, and specifies the manner in which the task is to be performed, and the contractor is later haled into court to answer for a harm that was caused by the contractor's compliance with the government's specifications, the contractor is entitled to the same immunity the government would enjoy, because the contractor is, under those circumstances, effectively acting as an organ of government, without independent discretion.

748 F. Supp. 2d at 1242.  In contrast, where

> the contractor is hired to perform the same task, but is allowed to exercise discretion in determining how the task should be accomplished, if the manner of performing the task ultimately causes actionable harm to a third party the contractor is not entitled to derivative sovereign immunity, because the harm can be traced, not to the government's actions or decisions, but to the contractor's independent decision to perform the task in an unsafe manner.  Similarly, where the contractor is hired to perform the task according to precise specifications but fails to comply with those specifications, and the contractor's deviation from the government specifications actionably harms a third party, the

> contractor is not entitled to immunity because, again, the harm was not caused by the government's insistence on a specified manner of performance but rather by the contractor's failure to act in accordance with the government's directives.

*Id.*

Applying these ideas here, VSE has no colorable claim to derivative sovereign immunity. First, as analyzed with the other prongs under § 1442(a)(1), VSE was not simply "following the sovereign's directives." *Chesney*, 782 F. Supp. 2d at 582. Again, it was an "independent contractor" that, along with Donaldson, developed and implemented the fireworks destruction plan (albeit with government approval).[8] The government did not "specif[y] the manner in which the task [was]

---

[8] As set forth in the Nov. 29, 2012 Order, the government "approved VSE's Property Destruction Plan on April 28, 2010." Doc. No. 88, Nov. 29, 2012 Order at 12, 2012 WL 5996548, at *5. Plaintiffs argue that the incident was caused by a deviation from that plan, when

> [d]estruction [of fireworks] was temporarily suspended, apparently (according to an email from Donaldson to VSE) while Donaldson implemented a procedure to "take out the small plastic tube that's located and enclosed at the bottom of the cardboard tube [of the fireworks]," which would "allow [Donaldson] to dispose of more firework by volume on multiple burns on any given burn day."

*Id.* at 13, 2012 WL 5996548, at *5 (citing Doc. No. 45-6, Watson Decl. Ex. D). VSE responds by emphasizing that the cause of the explosion is presently unknown, and that it remains disputed whether this "deviation" from the plan was such a cause.

Regardless, however, as this court noted in the Nov. 29, 2012 Order, "there is no indication that this email (from Donaldson to VSE) was forwarded to the government, and the record does not otherwise indicate that the government knew of this procedure, much less that it approved of it." *Id.* at 13 n.7, 2012 WL 5996548, at *5 n.7. That is, to decide the Motions to Remand, this court need not resolve whether Donaldson or VSE deviated from the plan that was approved by the government, much less determine the cause of the explosion. Rather, the critical undisputed facts for the present analysis are that the government did not specify the

(continued...)

to be performed." *Bixby*, 748 F. Supp. 2d at 1242.  Rather, VSE was "allowed to exercise discretion in determining how the task should be accomplished." *Id.*  The harm alleged against VSE "can be traced, not to the government's actions or decisions, but to the contractor's independent decision to perform the task in an unsafe manner." *Id.*  And because VSE was not "hired to perform the [fireworks destruction] according to precise specifications," it did not "fail[] to comply with [such] specifications." *Id.*  VSE is thus "not entitled to immunity because, again, the harm was not caused by the government's insistence on a specified manner of performance." *Id.*

Second, as VSE acknowledges, the Complaints allege that VSE was negligent in, among other allegations, failing to eliminate known risks of harm, failing to warn Plaintiffs, failing to provide a safe workplace, failing to properly manage and store the fireworks, and failing to ensure compliance with laws and regulations regarding explosives.  *E.g.*, Doc. No. 1-2 (*Kelii*), Compl. ¶¶ 27-36.  Such allegations of negligence render the defense inapplicable.  *See Ackerson*, 589 F.3d at 207 (stating that a contractor that commits a "separate act of negligence" is not entitled to derivative sovereign immunity under *Yearsley*); *City of Worcester*,

---

[8](...continued)
means of destruction, and nothing indicates it approved of any change in the plan's procedures.

753 F. Supp. at 38 ("[A] private corporation performing governmental functions pursuant to contractually delegated authority will not be liable unless: . . . the harm was caused by the private party's own tortious conduct."); *In re Katrina Canal Breaches Consol. Litig.*, 2007 WL 763742, at *4 (E.D. La. Mar. 9, 2007) ("Contractors cannot be held liable for performing contracts in conformity with the Government's specifications, providing the contractors carried out such contracts with due care and absent negligence.") (citations omitted).

Aware of this limitation, VSE emphasizes the allegations that it was involved in an ultra-hazardous activity for which strict liability -- not negligence -- applies. And because the United States cannot be liable under the FTCA under a strict liability theory, *see, e.g.*, *Laird*, 406 U.S. at 802-03, VSE essentially argues that it, as a government agent, should be entitled to the benefits of that same immunity.

The argument, however, is again foreclosed by the finding that VSE is an independent contractor. As such, in the Ninth Circuit, VSE's defense fails for this lack of an agency relationship. *See In re Hanford*, 534 F.3d at 1001 ("[*Yearsley*] limited the applicability of the defense to principal-agent relationships where the agent had no discretion . . . and completely followed government specifications. Nothing in *Yearsley* extended immunity to [government]

contractors exercising a discretionary governmental function.").[9]

Moreover, even if an "agency relationship" exists and VSE were found to have been involved in an ultrahazardous activity (for which strict liability attaches) in destroying fireworks, this still would not entitle it to share the government's immunity. *See, e.g.*, *D.F. Portis v. Folk Constr. Co.*, 694 F.2d 520, 524 (8th Cir. 1982) (applying the "well settled general principle that one who contracts with a public body for performance of public work, if not guilty of negligence or [a] willful tort, *and if not employing ultra hazardous methods*, is entitled to share the immunity of the public body") (quoting A.E. Korpela, Annotation, *Right of Contractor with Federal, State, or Local Public Body to Latter's Immunity from Tort Liability*, 9 A.L.R.3d 382, 386 (1966) (emphasis added)).

*Portis* recognized that *Yearsley* was the "leading case establishing the shared immunity doctrine" as analyzed in 9 A.L.R.3d 382. *See Portis*, 694 F.2d at 524. That is, it applied

> the principle that where the act, or failure to act, which causes an injury is one which the contractor was employed to do, and the injury results not from the negligent manner of doing the work, but from the

---

[9] *But see Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 205 (5th Cir. 2009) ("*Yearsley* does not require a public-works contractor defendant to establish a traditional agency relationship with the government.").

> performance thereof or failure to perform it at all, the
> contractor is entitled to share the immunity from liability
> which the public enjoys, but that the contractor is not
> entitled to the immunity of the public body from liability
> where the injury arises from the tortious manner of
> performing the work.

9 A.L.R.3d § 2[a].  And, under this general principle, if ultrahazardous activity is

involved, the contractor (as opposed to a public officer) is not entitled to shared

"public" (*i.e.*, governmental) immunity -- just as it could not share such immunity

if it were negligent.  *See, e.g.*, *Ackerson*, 589 F.3d at 207 (stating that a contractor

that commits a "separate act of negligence" is not entitled to derivative sovereign

immunity under *Yearsley*).  Indeed, applying this principle, a California court

addressing this very issue specifically held that an independent contractor engaged

in an ultra-hazardous activity is not entitled to governmental immunity under the

FTCA even if performing under a federal government contract.  *See Smith v.

Lockheed Propulsion Co.*, 56 Cal. Rptr. 128, 138-40 (Cal. App. 1967).  *See also,

e.g.*, *Lowry Hill Props., Inc. v. Asbach Constr. Co.*, 194 N.W.2d 767, 772 (Minn.

1972) ("[T]he doctrine of sovereign immunity is not to be extended to a contractor

who engages in an ultrahazardous or inherently dangerous activity even though he

follows the specifications and directions of the sovereign.") (citing cases).[10]

_____

[10]  And this makes sense.  Application of *Yearsley* should not be dependent on a specific
cause of action, but instead should be grounded in considerations of whether the contractor is

(continued...)

Further, the Ninth Circuit (applying Washington State law) has held that a government contractor is not entitled to the immunity from strict liability for abnormally dangerous activities that is otherwise provided to public officers or employees pursuing "public duties" under the Restatement (Second) of Torts § 521.[11]  *See In re Hanford*, 534 F.3d at 1005-07.  *In re Hanford* reasoned that for contractors to share such public immunity, they "must be operating pursuant to the mandate and control of the government; they must have little discretion over the manner in which they conduct their activities." *Id.* at 1007 (citations omitted).[12] And, as analyzed above, VSE was not operating under such governmental control.

---

[10](...continued)
"effectively acting as an organ of government, without independent discretion," *Bixby*, 748 F. Supp. 2d at 1242.  VSE clearly was not acting in such a limited, proscribed capacity.  For this reason, ultrahazardous activity constitutes "tortious activity" that falls outside *Yearsley* as the test is stated in *City of Worcester*, 753 F. Supp. at 38 ("[A] private corporation performing governmental functions pursuant to contractually delegated authority will not be liable unless: . . . (3) the harm was caused by the private party's own tortious conduct.").

[11]  Section 521 of the Restatement (Second) of Torts provides:
> The rules as to strict liability for abnormally dangerous activities do not apply if the activity is carried on in pursuance of a public duty imposed upon the actor as a public officer or employee or as a common carrier.

[12] *See also, e.g.*, *Lobozzo v. Adam Eidemiller, Inc.*, 263 A.2d 432, 434 (Pa. 1970) ("We hold that Section 521 was not intended to apply to independent contractors of public bodies, and that the rule of liability without fault enunciated by Section 519 of the Restatement should be applied to damage caused by ultrahazardous activity (such as blasting) undertaken by an independent contractor on a public as well as a private project.  This holding is in accord with the well reasoned decisions from a number of other jurisdictions, and with the views of two eminent scholars in this field, Harper & James, The Law of Torts, Supplement to Vol. 2, at p.13 (1968).") (citing numerous cases).

In short, VSE has no colorable claim to a "derivative sovereign immunity" defense.

## C.      Attorneys' Fees Under 28 U.S.C. § 1447(c)

Finally, Plaintiffs seek attorneys' fees and costs under 28 U.S.C. § 1447(c), which provides in pertinent part that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." "[A]n award of fees under § 1447(c) is left to the district court's discretion." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 141.

Applying its discretion, the court declines to award fees or costs to Plaintiffs as a result of VSE's removal. Although, ultimately, the decision to dismiss the Third-Party Complaints against United States was clear, such a result required considerable review of the record as set forth in the Nov. 29, 2012 Order. And the issues regarding federal officer removal under § 1442(a)(1) also involved a relatively complex analysis of a statute that is to be construed "liberally" and interpreted "broadly in favor of removal." *Durham*, 445 F.3d at 1252. In short, although the basis for remanding the actions is now clear, VSE nevertheless had an

"objectively reasonable basis" for seeking removal.[13]

## V.  <u>CONCLUSION</u>

For the foregoing reasons, the Motions to Remand are GRANTED.

These actions are REMANDED to the First Circuit Court of the State of Hawaii.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii: January 31, 2013.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Cabalce, et al. v. VSE Corp., et al.*, Civ. No. 12-00373 JMS-RLP; *Kelii, et al. v. VSE Corp., et al.*, Civ. No. 12-00376 JMS-RLP; *Freeman, et al. v. VSE Corp., et al.*, Civ. No. 12-00377 JMS-RLP; *Irvine, et al. v. VSE Corp., et al.*, Civ. No. 12-00391 JMS-RLP; Consolidated Order Remanding Actions to the First Circuit Court of the State of Hawaii

---

[13]  The court has not analyzed removal based on a "fraudulent joinder" theory, and need not address whether there was a reasonable basis for asserting it.  But the record indicates VSE did not abandon that theory until obtaining discovery regarding duties that certain landowner Defendants may have had as to storage of the fireworks.  *See* Doc. No. 92 (*Cabalce*), O'Neill Decl.